48 A.3d 366

FORD MOTOR CREDIT COMPANY, LLC, D/B/A JAGUAR CREDIT, PLAINTIFF, v. PATRICIA MENDOLA, DEFENDANT/THIRD-PARTY PLAINTIFF–APPELLANT, v. JAGUAR LAND ROVER NORTH AMERICA, LLC (IMPROPERLY PLED AS JAGUAR CARS, INC.), RAY CATENA JAGUAR OF EDISON, AND MODERN AUTO BODY OF SOUTH ORANGE, INC., THIRD-PARTY DEFENDANTS–RESPONDENTS, AND MADISON JAGUAR, MAIN AUTO SALES, INC., AND BOB OROZCO, THIRD-PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 27, 2012—Decided July 24, 2012.

Before Judges SABATINO, ASHRAFI and FASCIALE.

*Nabil N. Kassem* argued the cause for appellant (*Kassem & Camejo, L.L.C.*, attorneys; *Mr. Kassem*, on the brief).

*James S. Dobis* argued the cause for respondents *Jaguar Land Rover North America, LLC* and *Ray Catena Jaguar of Edison* (*Dobis, Russell & Peterson, P.C.*, attorneys; *Mr. Dobis*, on the brief).

*John S. Fetten* argued the cause for respondent *Modern Auto Body of South Orange, Inc.* (*Montgomery, Chapin & Fetten, P.C.*, attorneys; *Mr. Fetten*, of counsel; *Gary Ahladianakis*, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

The precise and limited issue we decide is whether a claimant must present expert testimony to support her causes of action against several defendants in the automotive business for damages sustained when the engine of her leased automobile seized. Third-party plaintiff Patricia Mendola appeals from orders granting summary judgment to third-party defendants because she did not produce a report of an expert witness by the close of discovery. We affirm in part and reverse in part.

I.

Viewed most favorably to appellant Mendola, *see R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), the evidence presented in the summary judgment record establishes the following facts.

Mendola leased a 2005 Jaguar S–Type from third-party defendant Ray Catena Jaguar of Edison on July 25, 2005. The three-year lease agreement required that she make payments of $765 per month to plaintiff Ford Motor Credit Company, LLC, which was operating as Jaguar Credit in this transaction.

In January 2007, Mendola's car was in an accident that caused extensive front end damage, including to the radiator. Third-party defendant Modern Auto Body of South Orange, Inc. repaired the car over a two-month period at a cost of nearly $15,000. The car was then inspected and the repairs approved on behalf of the lessor by third-party defendant Main Auto Sales, Inc., a dealership doing business as Madison Jaguar.

In March 2007, while the car was still being repaired, a safety recall letter was issued to owners and lessees of 2005 S–Types on the letterhead of "Jaguar Cars." [1] The recall letter pertained to specific fuel components located on the gasoline tank, and it warned that "[i]f the fuel tank is fully filled with fuel or the vehicle is parked on a hill with a leak path present, the driver may notice fuel odor or fuel leakage."

After completion and approval of the repairs related to the accident, the car was returned to Mendola on April 5, 2007. Within days, Mendola noticed that the "check engine" warning light flickered. The following weekend, Mendola drove 240 miles from Short Hills to Atlantic City and back. Either the low coolant warning light or the check engine light illuminated during the trip. Mendola stopped at a service station on the Garden State Parkway and told an attendant about the warning light. The attendant looked under the hood, and he may have added a fluid. Mendola did not see what the attendant did, and he told her nothing except that the car was "all set." She believes he added something to the engine because he charged her $9 in addition to the cost of gasoline. After the stop at the service area, Mendola's drive to and from Atlantic City was without further incident or illumination of warning lights.

---

[1] Jaguar Land Rover North America, LLC is the true name of the party designated in Mendola's third-party complaint as Jaguar Cars, Inc. For purposes of the appeal, we deem Jaguar Land Rover North America to be either the manufacturer of Mendola's vehicle or its distributor. In this opinion, we will refer to that third-party defendant simply as "Jaguar Cars."

Several days after the Atlantic City trip and about eleven days after the car was returned to her, Mendola saw the dashboard backlight dimming and smoke coming from under the hood. She stopped on the side of the road. The car was towed to Modern Auto Body, where it was determined that the engine had seized.

Subsequently, the car was towed to Madison Jaguar. On April 16, 2007, Madison Jaguar's mechanic noted in a service report that overheating had caused severe engine damage. The service report also stated: "Non Jaguar coolant was found in radiator. Coolant and oil mixed. Needs engine." A number of "diagnostic trouble codes" were listed in the report: "STO red indicating malfunction warning lamp did illuminate ... engine coolant temperature high ... intake air temperature circuit low input ... thermostat performance ... engine oil temperature circuit high input."

Bob Orozco, the service manager at Madison Jaguar, told Mendola that she was responsible for the engine seizure because of improper operation and maintenance of the car, and that Madison Jaguar would not repair the engine without charging her the full cost. The odometer reading on the service report indicated the car had been driven 17,959 miles.

Mendola and the third-party defendants did not come to an agreement as to responsibility for repairing the engine. In November 2007, Mendola stopped making lease payments, and the car was later repossessed by the lessor. In April 2009, Ford Motor Credit Company sued Mendola for breach of the lease agreement, demanding a total of more than $23,000 as the balance due under the terms of the lease. In her answer to the complaint, Mendola asserted a counterclaim against Ford Motor Credit Company and third-party claims against the other parties.[2] Mendola

---

2 The following list corresponds to named parties in the case caption and their relationship to the subject automobile:

*Ford Motor Credit Company*—holder of lease agreement on subject vehicle,
*Mendola*—lessee of vehicle,

alleged breach of unspecified express and implied warranties, negligent repair, negligent inspection, and other causes of action that are not at issue on this appeal.

At the conclusion of the discovery period, no party had produced an expert report. Those third-party defendants that remained in the case moved for summary judgment based on the lack of an expert report supporting Mendola's claims.[3] Mendola argued that third-party defendants had the initial burden of producing an expert witness and report because their assertion that she caused the engine failure was an affirmative defense.

By oral decision and orders dated April 15, 2011, the trial court dismissed Mendola's third-party complaint against all remaining third-party defendants, concluding that her claims were premised on a finding of product defect and required an expert witness to explain the defect and the cause of the engine failure.

## II.

Mendola contends the trial court erroneously shifted the burden of proof to her to disprove the affirmative defense of the third-party defendants and it mistakenly required expert evidence from her to prove that a defect caused the engine to seize. Since plaintiff challenges the "trial court's interpretation of the law and

---

*Jaguar Cars*—manufacturer or distributor of vehicle,
*Ray Catena Jaguar*—selling dealership,
*Modern Auto Body*—repair shop following accident,
*Madison Jaguar/Main Auto Sales*—dealership responsible for inspection of accident repairs and service of engine,
*Madison Jaguar/Morris County Jaguar*—successor to Main Auto Sales,
*Bob Orozco*—service manager for Madison Jaguar.

[3] The court had earlier dismissed the third-party complaint against Bob Orozco by summary judgment, and against Main Auto Sales because it had filed for bankruptcy. Those dismissals are not contested on this appeal. In addition, although Mendola's original notice of appeal included the order granting summary judgment to Madison Jaguar, Mendola did not serve her appellate submissions upon Morris County Jaguar, the new owner of that entity. She subsequently withdrew her appeal as to Madison Jaguar.

the legal consequences that flow from established facts," our standard of review is plenary. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

"In general, expert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion.' " *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 450, 625 *A.*2d 1110 (1993) (quoting *Wyatt ex rel. Caldwell v. Wyatt,* 217 *N.J.Super.* 580, 591, 526 *A.*2d 719 (App.Div. 1987)); *accord Butler v. Acme Mkts., Inc.,* 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982); *see N.J.R.E.* 702. When the proofs involve a defect in a complex instrumentality, an expert is frequently required to assist the jury in understanding the mechanical intricacies and weighing competing theories of causation. *Lauder v. Teaneck Volunteer Ambulance Corps,* 368 *N.J.Super.* 320, 330–31, 845 *A.*2d 1271 (App.Div.2004) (in product liability case, expert was required to prove what caused gurney to collapse); *Gore v. Otis Elevator Co.,* 335 *N.J.Super.* 296, 302–04, 762 *A.*2d 292 (App.Div. 2000) (in negligence case, expert was required to prove improper maintenance caused an elevator door to malfunction); *Rocco v. N.J. Transit Rail Operations, Inc.,* 330 *N.J.Super.* 320, 341, 749 *A.*2d 868 (App.Div.2000) (in product liability case, expert was required to prove injury was caused by defective design of train door).

The precise question of law in this case is whether Mendola or the third-party defendants had the initial burden of producing expert evidence to support the claims or defenses asserted. The answer to that question depends on the nature of each claim or defense.

A.

To establish a prima facie case of negligent repair or inspection under the circumstances of this case, Mendola needed to produce expert evidence that would allow a jury to determine whether defendants Modern Auto Body and Madison Jaguar performed their functions negligently and whether that negligence

caused the engine to seize. *See Gore, supra,* 335 *N.J.Super.* at 303, 762 *A.*2d 292.

■ In her pleading and other submissions, Mendola relied on the fact that the car became inoperable less than two weeks after it was repaired by Modern Auto Body and inspected by Madison Jaguar. Especially because a complex instrumentality is involved, the temporal proximity of the engine seizure to the repair and inspection work is insufficient by itself to prove causation, and consequently negligence. Other potential causes of the engine seizure also existed and were not negated.

The Supreme Court remarked many years ago: "A motor vehicle is not a simple uncomplicated instrumentality. Its parts require periodic maintenance, minor adjustments and occasional major repairs or replacements." *Scanlon v. Gen. Motors Corp.,* 65 *N.J.* 582, 599, 326 *A.*2d 673 (1974). Since *Scanlon,* the automobile has increased in mechanical and electronic complexity, while the public's familiarity with automotive mechanics has diminished. *Compare Cintrone v. Hertz Truck Leasing & Rental Srvc.,* 45 *N.J.* 434, 459, 212 *A.*2d 769 (1965) (brake failure within factfinder's common experience) *with Caldwell, supra,* 217 *N.J.Super.* at 591, 526 *A.*2d 719 (1987) (brake failure not within common experience).

Mendola drove the vehicle several hundred miles after a warning light signaled a problem, and she did not know what type of fluid the Parkway gas station attendant added under the hood. The failure of the engine may have been caused by negligent repair by Modern Auto Body and the failure of Madison Jaguar to discover the faulty repair when it inspected the car. It may also have been caused by improper operation by Mendola, improper maintenance by the Parkway gas station attendant, a manufacturing defect, or a confluence of causes. On this record, allowing a jury to determine liability based on a negligence claim would require impermissible speculation as to causation, and hence, negligence. *Lauder, supra,* 368 *N.J.Super.* at 330, 332, 845 *A.*2d 1271; *Caldwell, supra,* 217 *N.J.Super.* at 591–92, 526 *A.*2d 719; *see Reynolds v. Gonzalez,* 172 *N.J.* 266, 284, 798 *A.*2d 67 (2002)

("A mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.").

The trial court correctly dismissed Mendola's negligence claims against Modern Auto Body and Madison Jaguar for lack of expert testimony.

## B.

Mendola contends she does not need an expert witness to prove that a defective car was leased to her. She asserts that case law permits circumstantial evidence as proof of a defective product.

■ At times, a plaintiff may rely on circumstantial evidence to prove that a defect arose while a product was in the manufacturer's, distributor's, or seller's control. *Scanlon, supra,* 65 *N.J.* at 592–93, 326 *A.*2d 673 (citing *Jakubowski v. Minn. Mining & Mfg.,* 42 *N.J.* 177, 183–84, 199 *A.*2d 826 (1964)). In *Myrlak v. Port Authority of New York and New Jersey,* 157 *N.J.* 84, 104–07, 723 *A.*2d 45 (1999), the Court adopted as the law in New Jersey the principles stated in *Restatement (Third) of Torts: Products Liability* § 3 (1998) with respect to a finding of defect in a product liability case without the testimony of an expert witness.[4]

■ The engine seizure of Mendola's car, however, was distinguishable from those products and the losses suffered in cases where circumstantial evidence was sufficient to prove a defect. Prior cases have found several factors relevant when a claimant relies on circumstantial evidence of a defect—the age of the product, the nature of the defect, proper maintenance and opera-

---

[4] *Restatement* § 3 provides:

It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
(a) was of a kind that ordinarily occurs as a result of a product defect; and
(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

tion, and evidence negating other likely causes. *See, e.g., Myrlak, supra,* 157 *N.J.* at 98–99, 723 *A.*2d 45; *Moraca v. Ford Motor Co.,* 66 *N.J.* 454, 458–60, 332 *A.*2d 599 (1975); *Sabloff v. Yamaha Motor Co., Ltd.,* 59 *N.J.* 365, 283 *A.*2d 321 (1971), *aff'g o.b.* 113 *N.J.Super.* 279, 282–84, 286, 288, 273 *A.*2d 606 (App.Div.1971); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N.J.* 358, 368–69, 409–10, 161 *A.*2d 69 (1960).

■ Mendola's car was almost two years old and had been driven almost 18,000 miles. Its cooling system and other components were damaged in a serious car accident. The circumstantial evidence also supported a finding that the vehicle was not properly operated and maintained. Furthermore, the type of defect, overheating resulting in seizure of the engine, is not within the class of unusual defects easily attributable to the manufacturing of the product. The facts of this case do not allow a jury to find defect at the time the car was in the control of Jaguar Cars or Ray Catena Jaguar based only on circumstantial evidence.

■ Mendola also relies on the recall letter issued while her car was being repaired. But the recall letter did not prove a relevant defect because it pertained to gas tank components. The overheating and seizing of the engine were not linked by any expert or other evidence to the subject of the recall. *Cf. Manieri v. Volkswagenwerk A.G.,* 151 *N.J.Super.* 422, 431, 376 *A.*2d 1317 (App.Div.1977) (recall letter relevant when it involves the same type of defect), *certif. denied,* 75 *N.J.* 594, 384 *A.*2d 824 (1978).

The trial court correctly concluded that Mendola could not prove a defect without an expert witness.

## C.

The parties have argued the issues in this case without precisely identifying the causes of action stated in Mendola's third-party complaint. They have melded together claims of product liability based on a defective product, which sound primarily in principles of tort law, and claims of breach of warranty, which derive from the law of contracts.

Whether couched in terms of negligence, strict liability, or breach of an implied warranty, a product liability cause of action is subject to New Jersey's Product Liability Act, *N.J.S.A.* 2A:58C-1 to -11. The definitional section of that legislation states that " 'Product liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *N.J.S.A.* 2A:58C-1b(3). A product liability action requires proof of a design or manufacturing defect or a failure to warn adequately. *N.J.S.A.* 2A:58C-2. Such a product liability claim against a manufacturer, distributor, or seller is usually based on tort principles and requires proof of a defect or dangerous condition when the product was in their control. *Myrlak, supra,* 157 *N.J.* at 97, 723 *A.*2d 45.

Mendola cannot pursue a claim under the Product Liability Act based on a defective product. Such a "product liability" cause of action is available only for claims arising from personal injury or damage to property other than the defective product itself. Under the Product Liability Act, "harm" is defined as:

(a) physical damage to property, *other than to the product itself;* (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

[*N.J.S.A.* 2A:58C-1b(2) (emphasis added).]

The Product Liability Act and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product. *See Dean v. Barrett Homes, Inc.,* 204 *N.J.* 286, 294-98, 8 *A.*3d 766 (2010); *Alloway v. Gen. Marine Indus., L.P.,* 149 *N.J.* 620, 627-28, 695 *A.*2d 264 (1997); *Spring Motors Distribs., Inc. v. Ford Motor Co.,* 98 *N.J.* 555, 579-80, 489 *A.*2d 660 (1985).[5] Purely economic damages are addressed by the

---

[5] The contrary holding of *Santor v. A & M Karagheusian, Inc.,* 44 *N.J.* 52, 57, 66-67, 207 *A.*2d 305 (1965), was abrogated by *Spring Motors, supra,* 98 *N.J.* at 574-75, 489 *A.*2d 660, and *Alloway, supra,* 149 *N.J.* at 630-36, 695 *A.*2d 264.

law of contracts, in particular, relevant sections of the Uniform Commercial Code (UCC), *N.J.S.A.* 12A:2–313 to –317, –714, –715. *Alloway, supra,* 149 *N.J.* at 627, 630, 695 *A.2d* 264; *Spring Motors, supra,* 98 *N.J.* at 569–71, 577, 489 *A.2d* 660.

Therefore, Mendola's claims against Jaguar Cars and Ray Catena Jaguar must be evaluated in the context of the law that applies to contract claims, specifically in this case, claims of breach of warranty.

## D.

Mendola's claims of breach of warranty are made in very general terms in her third-party complaint. She has not specified the nature of the warranty or warranties that were allegedly breached. In fact, the summary judgment record does not contain actual evidence of the new vehicle warranty that was provided when Mendola leased the car. Counsel for Jaguar Cars and Ray Catena Jaguar produced a copy of a new vehicle warranty that refers to "your 1989[sic] Jaguar." Under the heading "Vehicle Limited Warranty—36 Months/36,000 Miles," the document states in relevant part:

> We warrant that if the car is properly operated and maintained, any part (except tires) will be repaired or replaced without charge during the Warranty Period if it is defective in workmanship or material.

In her arguments before us, Mendola does not reference this language or that of any other express warranty. She also does not provide us with case law pertaining to an implied warranty of merchantability under the UCC, *N.J.S.A.* 12A:2–314, in the context of her claims of damage to the vehicle itself and related consequential losses. Instead, she argues generally that she does not need an expert witness to prove a defect caused the engine of her Jaguar to seize. As we have stated, we agree with the trial judge that Mendola cannot prove a defect existed and caused the engine seizure without the testimony of an expert witness.

To prove a breach of an express warranty, however, Mendola is not required to prove a defect in the car. A prima facie case for

breach of express warranty only requires evidence of non-performance by the warrantor.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *N.J.S.A.* 12A:2-313(1)(a). As opposed to a product liability or common law tort claim, "the plaintiff in a warranty action need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Spring Motors, supra,* 98 *N.J.* at 586, 489 *A.*2d 660; *accord Gen. Motors Acceptance Corp. v. Jankowitz,* 216 *N.J.Super.* 313, 336, 523 *A.*2d 695 (App.Div.1987). Proof of causation must still be shown in a case based on breach of an express warranty, but "mere failure of promised performance is enough without proof of any defect." *Realmuto v. Straub Motors, Inc.,* 65 *N.J.* 336, 343, 322 *A.*2d 440 (1974) (citing *Collins v. Uniroyal, Inc.,* 64 *N.J.* 260, 262, 315 *A.*2d 16 (1974)). In *Jankowitz, supra,* 216 *N.J.Super.* at 320-22, 336-37, 523 *A.*2d 695, on facts that resemble those of this case, we held that the buyer of a new car was not required to produce expert evidence to prove that the manufacturer's and the seller's failure to repair the car was a breach of the express warranty they had provided.

Our point of disagreement with the trial court is its implicit conclusion that Mendola was required to produce expert evidence to establish a prima facie cause of action for breach of the express warranty allegedly provided by Jaguar Cars and Ray Catena Jaguar. The absence of expert evidence was the sole basis for the trial court's grant of summary judgment on all the third-party claims. We do not decide whether Mendola can ultimately prevail on her warranty claim. Also, the parties have not briefed the issue, and so, we do not comment in this opinion about the evidence required to prove a claim for damages to the product itself based on an implied warranty of merchantability under the UCC, *N.J.S.A.* 12A:2-314.

 Although the "1989" express warranty previously quoted refers to repair or replacement of a "defective" part, the failure of the engine to perform can be considered a defective condition of the car for purposes of an express warranty. Mendola was not required to produce the report of an expert witness to prove that the seized engine was caused by a defective part in the car at the time that it was in the control of the manufacturer or seller in order to establish a prima facie case of breach of express warranty. *Realmuto, supra,* 65 *N.J.* at 343, 322 *A.*2d 440; *Henningsen, supra,* 32 *N.J.* at 409–10, 161 *A.*2d 69; *Ventura v. Ford Motor Corp.,* 180 *N.J.Super.* 45, 53–54, 433 *A.*2d 801 (App.Div.1981). "[L]ess is required to reach the jury in a breach of express warranty case" than in a negligence or product liability case. *Realmuto, supra,* 65 *N.J.* at 343, 322 *A.*2d 440; *accord Collins, supra,* 64 *N.J.* at 262, 315 *A.*2d 16; *Henningsen, supra,* 32 *N.J.* at 412, 161 *A.*2d 69.

Here, Mendola presented evidence of non-performance and, on her claim for breach of express warranty, she shifted the burden of proof to Jaguar Cars and Ray Catena Jaguar to show that the engine seizure was not caused by a defect while the car was in their control and, therefore, they did not breach the warranty they allegedly issued to Mendola.

 Burdens of proof are allocated based upon "the type of proceedings, the comparative interests of the parties, the relative litigational strengths or weaknesses of the parties, the access of the parties to proof, and the objectives to be served by the evidence...." *Romano v. Kimmelman,* 96 *N.J.* 66, 89, 474 *A.*2d 1 (1984); *accord Mercedes–Benz Credit Corp. v. Lotito,* 328 *N.J.Super.* 491, 510, 746 *A.*2d 480 (App.Div.), *certif. denied,* 165 *N.J.* 137, 754 *A.*2d 1213 (2000). "Warranties developed in the law ... to protect the ordinary consumer who cannot be expected to have the knowledge or capacity ... to make adequate inspection of mechanical instrumentalities, like automobiles, and to decide for himself whether they are reasonably fit for the designed purpose." *Henningsen, supra,* 32 *N.J.* at 375, 161 *A.*2d 69.

■ An express warranty for a new automobile is not provided gratuitously by the manufacturer or seller. The cost of the warranty is included in the cost of the product. The consumer has purchased the warranty along with the car. It is "part of the benefit of the bargain." *Thiedemann v. Mercedes–Benz USA, LLC,* 183 *N.J.* 234, 251, 872 *A.*2d 783 (2005). The warranty would not have its apparent value if the consumer were initially required to prove, with the aid of an independent expert, that a defect in the product is the cause of its non-performance as warranted. Because a manufacturer or seller is in a better position to detect the cause of failed performance and to pass the cost on to consumers of making that determination, *Spring Motors, supra,* 98 *N.J.* at 567–68, 489 *A.*2d 660, it is fair and reasonable that the manufacturer or seller bear the burden of proving that it corrected a defect in a non-performing vehicle or that the failure of the vehicle was unrelated to the terms of the express warranty, *see Cintrone, supra,* 45 *N.J.* at 450–51, 212 *A.*2d 769; *Jankowitz, supra,* 216 *N.J.Super.* at 337–38, 523 *A.*2d 695.

■ A manufacturer or seller may raise misuse as a defense to a breach of warranty claim, such as when the buyer or lessee became aware of faulty performance and continued to make deliberate and unreasonable use of the product. *See Maiorino v. Weco Prods. Co.,* 45 *N.J.* 570, 573–74, 214 *A.*2d 18 (1965); *Cintrone, supra,* 45 *N.J.* at 458, 212 *A.*2d 769; *cf. N.J.S.A.* 12A:2–715 cmt. 5 (defendant may rebut proximate cause by proof of misuse); J. White & R. Summers, *Uniform Commercial Code* § 11–8 at 598 (4th ed.1995) (discussing warranty defenses based on plaintiff's contributory behavior). But misuse is a defense that must be proven by defendants as to Mendola's express warranty claim.

■ Here, a mechanic employed by Madison Jaguar examined the car after it was towed to that dealership on April 16, 2007. In a service report, the mechanic made vague reference to "non Jaguar coolant" and oil in the cooling system, and to diagnostic evidence that Mendola may have driven the car after warning lights alerted her to an engine problem. The service report may

qualify as a business record of Madison Jaguar, but it could not be admitted in evidence in its entirety under *N.J.R.E.* 803(c)(6). The information in the report involves relatively complex opinions or diagnostic conclusions that require supporting testimony by a witness qualified as an expert. *See State v. Matulewicz*, 101 *N.J.* 27, 32 n. 1, 499 *A.*2d 1363 (1985); *Nowacki v. Cmty. Med. Ctr.*, 279 *N.J.Super.* 276, 281–83, 652 *A.*2d 758 (App.Div.), *certif. denied*, 141 *N.J.* 95, 660 *A.*2d 1194 (1995); *see also Agha v. Feiner*, 198 *N.J.* 50, 63, 965 *A.*2d 141 (2009) (disapproving " 'wholesale [introduction] of otherwise inadmissible evidence' " based on rule of evidence that permits expert to rely on hearsay in forming opinion (quoting *State v. Vandeweaghe*, 351 *N.J.Super.* 467, 480–81, 799 *A.*2d 1 (App.Div.2002) (alteration in original), *aff'd*, 177 *N.J.* 229, 827 *A.*2d 1028 (2003))).

It would not have been particularly burdensome for Jaguar Cars or Ray Catena Jaguar to produce an expert report based initially on the Jaguar mechanic's examination of the car after it was towed to the Madison Jaguar facility. Why they did not do so is not apparent in the record before us.

We do not hold that summary judgment on the ground that the claimant lacks an expert report is always inappropriate on a claim of breach of express warranty. Had third-party defendants produced an expert report identifying the cause of the engine seizure as one that was not covered by express warranty, Mendola may have needed her own expert report to counter the defense expert and to establish genuine issues of material fact. The need for a responsive report would depend on the contents of the defense expert report and the qualifications and methodology of the expert. *See N.J.R.E.* 702.

We also do not express any view on whether the summary judgment record contained issues of material fact as to the terms of an express new vehicle warranty. It appears that an express warranty was provided by Jaguar Cars, but whether or not the warranty also bound Ray Catena Jaguar is not before us on this record. As we have stated, the trial court's decision on summary

judgment relied entirely on the absence of expert testimony. The court did not address whether Mendola had adequately made and supported a cause of action based on an express warranty.

We are constrained to reverse only that part of the trial court's summary judgment decision requiring as a matter of law that Mendola produce expert testimony to prove a prima facie case for breach of express warranty. We express no opinion as to whether third-party defendants were entitled to summary judgment dismissing express warranty claims on other grounds.

## III.

As to all third-party defendants, we affirm the dismissal of Mendola's negligence and product liability claims based on improper repairs or a defective product. We reverse the dismissal of her breach of express warranty claims against Jaguar Cars and Ray Catena Jaguar. We remand to the trial court for further proceedings consistent with our decision. We do not retain jurisdiction.