**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5358-17T2

SOFYA REZNIK,

    Plaintiff-Appellant,

v.

AMERICAN HONDA MOTOR
COMPANY, INC.,

    Defendant-Respondent.

_____

        Argued November 12, 2019 –
        Decided September  1, 2020

        Before Judges Ostrer and Susswein.

        On appeal from the Superior Court of New Jersey, Law
        Division, Passaic County, Docket No. L-4023-12.

        Jonathan Jaye Sobel argued the cause for appellant.

        Katherine A. Wang argued the cause for respondent
        (Campbell Conroy & O'Neil, PC, attorneys; William
        Joseph Conroy, Katherine A. Wang, and Yasha Khatib
        Shahidi, on the brief).

PER CURIAM

This products liability case returns to us after a remand. Without reaching the merits of plaintiff's claims, we reversed the dismissal with prejudice of plaintiff's complaint against American Honda Motor Company (Honda). We held the dismissal was based on several erroneous discovery and procedural orders. We assume the reader's familiarity with our prior opinion. See Reznik v. American Honda Motor, Co., No. A-5459-14 (App. Div. July 13, 2017). Plaintiff again appeals from the dismissal of her complaint, this time upon entry of summary judgment. She also appeals from the trial court's order declining to further extend a discovery deadline to permit her to produce a liability expert's report. Having reviewed plaintiff's arguments in light of the record and applicable principles of law, we affirm.

## I.

Plaintiff Sofya Reznik was injured when the Acura TSX she was driving collided with another vehicle after she made an unsafe left turn. She contends Honda defectively designed and manufactured her vehicle's seatbelt and airbag. As a result, she alleged the seatbelt broke, and the deployed airbag emitted particles that triggered an infection, which caused other medical problems.

When Reznik's friend retrieved her personal items from the Acura shortly after the accident, the friend noticed the driver's seatbelt was torn and hanging

near the driver's side window (indicating the tear was in the shoulder harness part of the belt). An emergency medical technician stated that if he had observed a torn seatbelt, then he would likely have mentioned it in his report, but his report was silent on the matter. He also did not know whether a first-responder cut the belt to help extricate Reznik, before the EMT arrived. He did recall that the driver's seat was located unusually close to the steering wheel from which one of the airbags deployed.

However, Reznik did not preserve the vehicle, although she admitted that she contemplated a lawsuit immediately after the accident. Nor were photographs taken of the allegedly damaged seatbelt. Her insurance company declared the car a total loss after receiving a repair estimate. Eventually, the car was shipped out of country. Subsequent efforts to recover it were unavailing.

Several months after we reinstated the complaint, the court set deadlines for completing discovery. The court's November 28, 2017, case management order required, among other things, that Reznik appear to complete her deposition by December 15, 2017; depose a Honda corporate designee by January 15, 2018; and produce expert reports by January 20, 2018. Trial was set for March 19, 2018.

3

After Reznik failed to appear for her deposition, the court dismissed her complaint with prejudice. However, the court reconsidered its decision after Reznik provided proof of a hospitalization and subsequent care. In an on-the-record scheduling conference following the decision to vacate the dismissal, the court set new deadlines. The court required Reznik to complete her deposition by March 26, 2018, and produce her expert reports by April 30, 2018. The Honda corporate designee's deposition was to be completed by May 15, 2018. Trial was set for June 25, 2018.

Her deposition was completed in March. The court quashed her deposition notice of the corporate designee as overbroad, but allowed her to narrow her notice. Six days before the April 30, 2018 expert report deadline, Reznik's counsel asked the court by letter for a one-month extension. Counsel cited "the nature and complexity of the issues involved with respect to both liability and damages." Honda opposed the request in a responding letter and the court denied the extension.

On the day by which her experts' reports were due, Reznik filed a formal motion to extend discovery one month. Counsel certified that plaintiff had engaged a liability expert and asserted he would need less than a month more time to complete a report. He did not disclose when the expert was retained. He

also stated that Reznik had retained two physicians as damage experts, who said they would complete their reports in a month. Counsel asserted the experts would continue their work while the motion was pending. Reznik separately certified that the liability expert could not prepare his report until Honda's corporate designee was deposed.

Honda opposed the extension motion, noting that Reznik was long aware of the need for expert reports, and she failed to establish exceptional circumstances to justify the extension. Honda moved for summary judgment, contending that expert reports were essential to prove plaintiff's case. Alternatively, Honda argued that Reznik's failure to preserve the Acura for inspection so prejudiced Honda's defense that the only remedy was dismissal.

By the time the court heard the competing motions on June 15, 2018, Reznik had supplied both damage experts' reports and relied upon them in opposing the summary judgment motion. One expert opined that particles from the airbag caused an infection of her bone and spinal disks; although the infection resolved, it triggered a cascade of other medical problems.

However, Reznik produced no liability expert report. Her counsel also conceded at oral argument that he no longer sought the corporate designee's deposition.

A-5358-17T2

At the outset of argument, the trial judge asked Reznik's counsel if he wanted to proceed first with his motion to extend discovery. He replied that decision on the summary judgment motion might render the motion moot. So, the court first heard argument on the summary judgment motion and ultimately granted it.

The court held that expert testimony to establish a defect in manufacture or design was essential, and Reznik's failure to produce a liability expert doomed her product liability cause of action. Alternatively, the court held that the failure to preserve the vehicle "probably would be fatal" to Reznik's claims, rejecting the argument that an adverse inference would be a sufficient sanction for the spoliation of evidence. After entering an order granting summary judgment, the court denied the motion to extend discovery, deeming it moot.

Reznik now appeals from the two orders, asserting the trial court erred in denying her request to extend the discovery end date for producing an expert witness and granting Honda summary judgment. Reznik contends: the trial court abused its discretion in refusing to extend discovery; the trial court mistakenly applied the spoliation of evidence doctrine; her product liability claims were viable without a liability expert report; and the court should not have dismissed her breach of warranty claims.

II.

We turn first to the discovery motion. Reznik recognizes that as a trial date was already fixed, she was required to show "exceptional circumstances" justifying an extension of time. R. 4:24-1(c). To meet that high threshold, she was required to demonstrate:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005).]

We deferentially review for an abuse of discretion a trial court's order managing discovery, including one denying a request to extend deadlines. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011); Bender v. Adelson, 187 N.J. 411, 428 (2006). However, the trial court did not exercise its discretion in applying the applicable test. Rather, it concluded the discovery motion was moot after granting summary judgment. Therefore, we are constrained to address the applicable standard anew. Cf. State v. Darby, 174 N.J. 509, 518 (2002) (stating that while the decision to admit other crimes or

7

wrongs evidence is ordinarily reviewed for an abuse of discretion, the appellate court will review the order de novo where the trial court failed to apply the applicable test). Doing so, we conclude that Reznik failed to demonstrate exceptional circumstances justifying an additional extension of time.

Reznik's previous travails with prior counsel may have excused her prior failure to obtain a report; and she understandably took no action while her prior appeal was pending and her case was dismissed. But, beginning with our July 2017 decision restoring her complaint, Reznik should have been aware of the need to timely obtain a liability expert's report. No doubt, the report was essential to her case (Rivers factor 2). However, she provided no evidence of diligent efforts to retain an expert nor has she explained why the report had not been produced (Rivers factor 1). She failed to identify circumstances beyond her and her counsel's control that necessitated an extension (Rivers factor 4). Notably, counsel's April 30, 2018 certification, which identified the liability expert Reznik allegedly retained, did not state when she retained him, nor did counsel present competent evidence from the expert himself regarding his retention and his need for more time.[1] Counsel failed to explain why he waited

_____

[1] Evidence on a motion must be presented by "affidavits [or certifications] made on personal knowledge, setting forth only facts which are admissible in evidence

until the day by which the report was due to move for more time (<u>Rivers</u> factor 4).

Counsel conceded at oral argument he no longer sought the corporate designee's deposition. In any event, Reznik's contention that the deposition was needed to produce an expert report was unsupported by competent evidence from the expert himself. Furthermore, the court's prior order required the liability expert's report before the corporate designee's deposition. Reznik sought no relief from that schedule when the court issued it.

Reznik now argues that she waited for the court's ruling on the extension motion before obtaining the liability expert's report. However, that argument is belied by counsel's statement, in his certification supporting that motion, that the experts would continue their work pending the motion. Counsel projected that all reports would be completed by a date that turned out to be two weeks before the motion's return date. That turned out to be true for the damage experts, but not for the liability expert. <u>See</u> <u>Rivers</u>, 378 N.J. Super. at 81 (affirming the finding of no exceptional circumstances, noting the case was not

---

to which the affiant is competent to testify . . . ." <u>R.</u> 1:6-6. It is unclear how counsel would know the expert needed a month, other than by asking him; which means that counsel's certification implicitly relied on the expert's inadmissible hearsay statements. <u>See</u> N.J.R.E. 802.

one "where experts reports were ready to be served and [the] plaintiff just needed a short extension to do so").

Lastly, Reznik argues that a one-month extension was minimal compared to the many years the case has been pending. However, the age of the case warrants greater scrutiny, not less, of further extensions. Cf. Tynes v. St. Peter's Univ. Med. Ctr., 408 N.J. Super. 159, 171 (App. Div. 2009) (noting that "the age of the case" is a factor in determining whether a party has met the more lenient "good cause" standard under Rule 4:24-1(c) for extending discovery before an arbitration or trial date is set).

In sum, Reznik fell far short of justifying a further extension of time to produce a liability expert's report. Although we do so for a different reason, see State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (noting an appellate court may affirm a trial court order for reasons other than those the trial court expressed), we affirm the trial court's order denying Reznik's motion to extend the deadline for submitting expert reports.

III.

We next consider Reznik's arguments regarding spoliation of evidence. Whether a party has a duty to preserve evidence is a legal issue determined by the court. Aetna Life and Cas. Co. v. Imet Mason Contractors, 309 N.J. Super.

10

358, 365 (App. Div. 1998). Consequently, we owe no deference to the trial court's determination. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). On the other hand, as we have viewed the failure to comply with that duty as a failure to make discovery, we have reviewed the trial court's imposition of a sanction for an abuse of discretion. Aetna Life and Cas., 309 N.J. Super. at 365. We will not disturb the trial court's determination of the appropriate sanction if it is "just and reasonable under the circumstances." Ibid. Put another way, we will intervene if a sanction less than the one the trial court imposed would erase the prejudice to the non-delinquent party. Ibid.

The trial court found that Reznik had a duty to preserve the Acura. We agree. The duty arises where there is "pending or probable litigation" against the defendant; the plaintiff knows litigation exists or is likely; the evidence is relevant to the litigation; and it is foreseeable that discarding the evidence would prejudice the defendant. Id. at 366.

Reznik's contentions on appeal that she did not know litigation was likely is belied by her concession, in her deposition, that the day after the accident, she decided to sue Honda. Her claim that she had no way of foreseeing the harm to Honda defies reason. She concluded immediately after the accident that the Acura was defective in some way. Both to prove her own case, and to permit

11

Honda a fair opportunity to defend, a reasonable person would have foreseen the need to preserve the vehicle.  Indeed, she informed her insurance company that she believed the car was defective.  She simply failed to take the additional steps to preserve it.  In determining whether there existed a duty to preserve the evidence, it matters not that Reznik did not intend to frustrate Honda's defense.  Id. at 368 (stating "'[t]he spoliator's level of intent, whether negligent or intentional, does not affect the spoliator's liability'" (quoting Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222, 256 (Law Div. 1993))).  Her state of mind is relevant only to determine the appropriate sanction.  Ibid.

We recognize that the trial court did not definitively decide that the failure to preserve the Acura required dismissal.  The court held that the spoliation was "probably fatal" to Reznik's case.  To the extent the trial court failed to conclusively decide the appropriate sanction, we exercise original jurisdiction — given the age of this case and the adequacy of the record — and determine without qualification that dismissal was the only appropriate sanction available under the circumstances.  See Price v. Himeji, LLC, 214 N.J. 263, 295 (2013) (noting that in exercising original jurisdiction, an appellate court "appl[ies] the same standard and scope of review as would the decision-maker into whose place [it] step[s]").

12

We consider the spoliator's fault, the prejudice to the non-delinquent party, and whether a lesser sanction would effectively erase that prejudice. Aetna Life & Cas., 309 N.J. Super. 365-66, 368; see also Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994) (identifying those same three factors). Although Reznik may not have intended to frustrate Honda's defense, her failure to preserve the Acura was negligent. She knew she planned to sue and presents no persuasive explanation as to why she did nothing to preserve the vehicle.

We also reject Reznik's contention that the vehicle's absence would not prejudice Honda's defense. Rather, we conclude the prejudice was so significant that dismissal was the only option. In her amended complaint, plaintiff alleged the seatbelt and airbag were defectively designed and manufactured. She alleged "the seatbelt could not have ripped and the airbag could not have deployed with such intensity if they would not have been designed in a defective manner," and she alleged that Honda deviated from its own "design specifications, formulae, and performance standards" and "from otherwise identical units manufactured to the same manufacturing specifications" by Honda. Notably, Reznik did not present an expert witness who relied on testing

exemplars of Reznik's vehicle. Proof of Reznik's claim relied solely on evidence inherent in her personal vehicle.

For purposes of our spoliation discussion, we will accept for argument's sake Reznik's contention that she could proceed without an expert, based only on circumstantial evidence. See Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 65 N.J. 582, 591 (1974) (noting that circumstantial evidence can be sufficient to prove a manufacturing defect).[2] Reznik contends that a torn seatbelt bespeaks a defect; and so did an airbag that dispersed particles that somehow entered her body and caused an infection. She also points to a recall of the passenger side airbag of the model vehicle she drove.[3]

---

[2] In Scanlon, the Court noted that, in addition to evidence of an accident, a plaintiff can support a defective product claim by providing "additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something was wrong with [the product]." 65 N.J. at 591.

[3] Although evidence of a product recall can be circumstantial evidence that the defect arose while the manufacturer possessed the product, see Manieri v. Volkswagenwerk A.G., 151 N.J. Super. 422, 431 (App. Div. 1977), there is no evidence of a recall of the driver's side airbag, which deployed in Reznik's accident, and she provided no basis to infer a defect in the driver's side airbag from the recall of the passenger side airbag, see Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 239 (App. Div. 2012) (noting that a recall letter pertaining to gas tank components was not probative of an alleged engine defect absent expert or other evidence linking the two).

14

Even if that were so — a premise we reject below in concluding a liability expert was essential — Honda was prejudiced by its inability to inspect the vehicle. The only evidence of a torn seatbelt is the certification of Reznik's friend. A simple inspection by Honda may have found that the seatbelt was not torn in the accident, but was cut (by a first-responder or someone else), or was damaged in the transport of the vehicle to the salvage yard; or was not torn at all. Likewise, had the vehicle been available, Honda could have examined the airbag and the passenger compartment, to assess the presence and characteristics of any emitted particles; and whether there were any other signs of malfunction or manufacturing deviation in the airbag. Honda's prejudice is exacerbated by the absence of any detailed photographs or forensic testing of the vehicle before its disappearance.

In Aetna Life & Cas., a fire that damaged housing units allegedly originated in the engine of an old Ford van parked nearby. The plaintiff insurer and subrogee appealed from the summary judgment dismissal of its claim against Ford and a repair shop after the damaged vehicle was destroyed before the defendants could inspect it. In that case, experts for Aetna and another insurer examined the vehicle before its destruction and identified various alleged

defects in the engine and related components. However, Ford and the servicer were denied their own chance to have their experts examine the vehicle.

We held that "the need for actual examination" by the defendants "was essential." 309 N.J. Super. at 368. Even photographs were not an adequate substitute. We ultimately held that a sanction less than dismissal, namely, preclusion of expert testimony, would have been an "appropriate sanction." Id. at 369-70. However, critically, that sanction would have yielded the same eventual result: dismissal of the plaintiff's complaint. Ibid.

Here, Reznik has no expert testimony to suppress. Her circumstantial evidence relates directly to the missing vehicle. Suppressing evidence as to that is tantamount to dismissal. Lastly, an adverse inference charge — permitting the jury to infer that had the vehicle been preserved, it would have been unfavorable to plaintiff — would invite speculation, and would not erase the prejudice to Honda.

Therefore, dismissal was the only appropriate sanction for Reznik's failure to preserve the vehicle.

IV.

We turn next to the court's order granting summary judgment dismissal of Reznik's complaint. We review the trial court's order de novo, employing the

16

same standard as the trial court. Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010). We consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "Thus, the court's task is to determine whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving party." Perez v. Professionally Green, LLC, 215 N.J. 388, 405–06 (2013). Applying that standard, we agree with the trial court's determination that absent an expert opinion on liability, Reznik could not sustain her claim that Honda defectively designed and manufactured her vehicle. Thus, even without the sanction for spoliation, dismissal with prejudice was warranted.

Under the Products Liability Act, to establish a manufacturing defect claim, a plaintiff must prove "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. 2A:58C-2(a). To prove a design defect claim, a plaintiff must prove the harm-causing product was "not reasonably fit,

suitable or safe for its intended purpose because it . . . was designed in a defective manner."  N.J.S.A. 2A:58C-2(c).

"Generally, the fact-finder is required to perform a risk-utility analysis in order to determine whether a product is defective in its design."  Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 341 (App. Div. 2000). However, the analysis, as modified by statute, generally requires the plaintiff to meet the defense embodied in N.J.S.A. 2A:58C-3(a)(2), which provides there is no liability if the product's

> characteristics . . . are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended . . . .
>
> [See also Roberts v. Rich Foods, Inc., 139 N.J. 365, 377-78 (1995) (discussing N.J.S.A. 2A:58C-3(a)(2)).]

An exception is made where the product's dangers "can feasibly be eliminated without impairing [its] usefulness . . . ."  N.J.S.A. 2A:58C-3(a)(2); see also Roberts, 139 N.J. at 377-78.

"Expert testimony is required when the subject matter to be dealt with 'is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.'"  Rocco, 330

N.J. Super. at 341 (quoting Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982)). Moreover, "[w]hen the proofs involve a defect in a complex instrumentality, an expert is frequently required to assist the jury in understanding the mechanical intricacies and weighing competing theories of causation." Ford Motor Credit Co., 427 N.J. Super. at 236. "'A motor vehicle is not a simple uncomplicated instrumentality. Its parts require periodic maintenance, minor adjustments and occasional major repairs or replacements.'" Id. at 237 (quoting Scanlon, 65 N.J. at 599). Over the years, "the automobile has increased in mechanical and electronic complexity, while the public's familiarity with automotive mechanics has diminished." Ibid. In particular, performing a risk-utility analysis related to a design defect claim generally requires an expert. Rocco, 330 N.J. Super. at 341. In Rocco, we affirmed the dismissal of a design defect claim because the plaintiff lacked an expert.

We acknowledge that expert testimony is not necessarily required when the design defect is self-evident. See Rocco, 330 N.J. Super. at 341 (citing Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 170-71 (1979)). As we noted in Ford Motor Credit, the Supreme Court has adopted the standard in Restatement (Third) of Torts: Products Liability § 3 (Am. Law. Inst. 1998) for finding a defect in a products liability claim without an expert's testimony. 427

N.J. Super. at 238 (citing <u>Myrlak v. Port Auth. of N.Y. and N.J.</u>, 157 N.J. 84, 104-07 (1999)). Section 3 states that it may be inferred that a plaintiff's injuries "w[ere] caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of a product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." <u>Restatement (Third) of Torts: Products Liability</u> § 3.

A jury may not assume that the "incident that harmed" Reznik "was of a kind that ordinarily occurs as a result of a product defect." This is not a case where an airbag spontaneously deployed when a car was idling at an intersection, injuring the driver. That might well bespeak of a defect. <u>See</u> <u>Pruitt v. Gen. Motors Corp.</u>, 86 Cal. Rptr. 2d 4, 6 (Ct. App. 1999) (discussing such a hypothetical). Rather, this is a case in which an airbag deployed in a close-to-head-on collision. People may be injured by non-defective airbags, especially if they sit too close to where they deploy. <u>See</u> <u>Fisher v. Ford Motor Co.</u>, 224 F.3d 570, 572 (6th Cir. 2000) (noting federally mandated warning on vehicle sun-visor regarding sitting "unnecessarily close to the air bag"); <u>Crespo v. Chrysler Corp.</u>, 75 F. Supp. 2d 225, 226-27 (S.D.N.Y. 1999) (noting that "[t]o

inflate rapidly and forcefully enough to save lives [airbags] create a lethal hazard to young children and other small persons sitting too close to the point of deployment").

It is also not self-evident that a defect would ordinarily be responsible for the emission of particles in the air when the airbag emerged from the steering wheel and inflated. Perhaps, particles in the air are an unavoidable consequence of an airbag bursting from its container within a steering wheel or side pillar, and inflating with the help of a propellant of some sort. Airbag deployment is not part of consumers' common experience; "[m]inimum safety standards for air bags" lie outside jurors' common knowledge. Pruitt, 86 Cal. Rptr. 2d at 6. Therefore, "[j]urors are in need of expert testimony to evaluate the risks and benefits of the challenged design." Ibid. Contrary to Reznik's contention, the emission of particles during the airbag's deployment does not constitute circumstantial evidence of a manufacturing or design defect. Expert testimony was needed to describe such things as the process by which an airbag emerges from its container and inflates, the composition and characteristics of the propellant that instantly inflates an airbag, and the durability or the integrity of the airbag upon impact.

21

Plaintiff's claim that the seatbelt was defectively manufactured and designed also fails without an expert. The record indicates that Reznik's Acura crashed almost head-on with an oncoming vehicle. An expert was required to testify about how a non-defective seatbelt would respond. However, even if one assumes that only a defectively manufactured or designed seatbelt would tear under the circumstances of Reznik's collision, an expert was needed to ascertain whether the seatbelt in this case actually tore during the accident. We are required to extend to Reznik the favorable inference that her friend accurately described the state of the seatbelt when retrieving Reznik's property. Brill, 142 N.J. at 540. However, that does not establish how or when the seatbelt tore. Notably, Reznik herself did not observe a break, nor contend the seatbelt did not restrain her. An expert's examination of the seatbelt was required.

In sum, the court did not err in granting summary judgment dismissal of Reznik's design defect and manufacture claims based on her failure to produce a liability expert's report.

V.

Reznik's remaining points require only brief comment. She contends she used her vehicle properly and "she should have been warned as to the defective

nature of the seatbelt and airbags." Here, Reznik failed to establish, through essential expert opinion, that the seatbelt and airbag were defective.

Furthermore, "[i]n a failure-to-warn case, the alleged product defect is not a flaw in the structure or design of the product itself. Rather, the defect is the absence of a warning to unsuspecting users that the product can potentially cause injury." Coffman v. Keene Corp., 133 N.J. 581, 593–94 (1993). "Many products require adequate instructions on the proper use of the product to render them safe, and therefore the lack of adequate warnings about the product's inherent dangers will constitute a defect in the product itself." Whelan v. Armstrong Int'l Inc., ___ N.J. ___, ___ (2020) (slip op. at 24). Viewing Reznik's failure-to-warn claim in this light, she also failed to present a prima facie case. Although an expert is not necessarily required in an "uncomplicated" failure-to-warn case, Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 73 (1996) (Coleman, J., concurring in part and dissenting in part), it is beyond the ken of the average juror to determine what kind of warning should address the risk of particulate emissions when an airbag deploys. Reznik was required to present expert testimony.

Reznik also claims her express breach of warranty claim was erroneously dismissed. We recognize that proof of a breach-of-warranty claim does not require proof of a defect; it requires proof only that the defendant failed to

conform to the promises in its warranty. <u>Ford Motor Credit</u>, 427 N.J. Super. at 241-42. However, she provides no evidence of the express warranty or representation to which Honda allegedly failed to conform. Therefore, the express warranty claim was properly dismissed.

To the extent not addressed, Reznik's remaining points lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5358-17T2