**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0719-23

MARC D. SERRA,

       Plaintiff-Appellant/
Cross-Respondent,

v.

MIDLAND REALTY
ASSOCIATES, LLC,

       Defendant-Respondent/
Cross-Appellant,

and

AFFILIATED MANAGEMENT,
INC., and MICHAEL FINER,

       Defendants-Respondents.

_____

Submitted May 14, 2025 – Decided August 1, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9152-18.

Marc D. Serra, appellant/cross-respondent pro se.

Brach Eichler, LLC, attorneys for respondent/cross-appellant Midland Realty Associates, LLC and respondent Michael Finer (Andrew R. Macklin, of counsel and on the brief).

Tango, Dickinson, Lorenzo, McDermott & McGee, LLP, attorneys for respondent Affiliated Management, Inc. (Joao M. Sapata, on the brief).

PER CURIAM

Plaintiff Marc D. Serra, a self-represented attorney, appeals from: the Law Division's March 10, 2023 summary judgment dismissal of his third amended complaint against defendants Midland Realty Associates, LLC, Affiliated Management, Inc., and Michael Finer; a June 28, 2023 order denying reconsideration of summary judgment; and the April 14, 2023 orders denying his motions to reopen discovery and disqualify one of two firms representing defendants. Plaintiff also appeals from an October 20, 2023 order denying his application to recuse the motion judge. Defendants cross-appeal from another October 20, 2023 order denying their motion for sanctions against plaintiff. We affirm all orders under review.

## I. Pertinent Events

The facts underscoring plaintiff's action are straightforward and largely undisputed; the procedural history is protracted and contentious. We chronicle only those events pertinent to this appeal.

2

The allegations asserted in plaintiff's third amended complaint arose from his residential tenancy at the Midland Apartments in Montclair, a seventy-four-unit building owned by Midland Realty and managed by Affiliated through its property manager, Finer. Following motion practice spanning nearly two years, not germane to this appeal, in October 2020, plaintiff filed a third amended complaint against defendants asserting claims for: negligence (count one); affirmative action rent abatement (count two); a violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210 (count three); trespass to land (count four); trespass to chattels (count five); invasion of privacy (count six); retaliatory eviction regarding defendant's summary dispossession action (count seven); another CFA violation (count eight); and intentional inflection of emotional distress (count nine).[1] Plaintiff alleged, after Affiliated assumed management of Midland Apartments in 2000, his apartment had a series of "habitability" issues, including: reduction in hot water flow; flickering lights; inadequate heat; sewage backups in his bathroom; an exterior slamming door; a

---

[1] Before the motion judge and this court, two law firms have represented defendants on different counts of plaintiff's third amended complaint. Tango, Dickinson, Lorenzo, McDermott & McGee, LLP has represented defendants on counts one, four, five, and seven; Brach Eichler LLC has represented defendants on counts two, three, six, eight, and nine.

3

noisy upstairs neighbor; and elevator issues. Plaintiff also claimed Finer entered his apartment without his permission in January 2019, and defendants filed "fabricated" late fees on his rent payments.

One year after he filed his third amended complaint, in November 2021, plaintiff moved to join Peapack Gladstone Bank as a necessary party. Defendants then served plaintiff with a Rule 1:4-8 letter, asserting his third amended complaint and motion practice were frivolous. Discovery ended on December 27, 2021. Shortly thereafter, the motion judge denied plaintiff's application to add the bank as a defendant. Plaintiff moved for reconsideration and sought to extend discovery. Defendants served plaintiffs with another Rule 1:4-8 letter, asserting plaintiff's application was frivolous. The motion judge denied plaintiff's application.

In August 2022, the parties attended nonbinding arbitration. That same day, the arbitrator entered a no cause of action award in favor of defendants.

The following month, plaintiff served Alan Hammer, Esq., a member of Brach Eichler and owner of Midland Apartments, with a subpoena to testify at deposition. Plaintiff also served defense expert, George J. Carnevale, Ph.D., with a subpoena duces tecum. Defendants moved to quash the subpoenas and for attorney's fees in October 2022.

4

In January 2023, Brach Eichler moved for partial summary judgment on behalf of defendants as to counts two, three, six, eight, and nine of plaintiff's third amended complaint. Tango Dickinson moved for partial summary judgment on behalf of defendants as to counts one, four, five, and seven.

Following argument on January 20, 2023, the motion judge issued an oral decision, granting defendants' motions to quash the subpoenas served on Hammer and Carnevale. We denied plaintiff's motion for leave to appeal from the memorializing order. Serra v. Midland Realty Assocs., LLC, No. 2943-22 (App. Div. Mar. 6, 2023).

On March 8, 2023, two days before the return date on defendants' summary judgment motions, and less than two months before the April 24, 2023 trial date, plaintiff moved to reopen discovery and disqualify Brach Eichler from further representation. Asserting Hammer was a potential witness in this matter, plaintiff claimed he had "no reason to know that a partner at Brach Eichler was also a party to this litigation" and, as such, plaintiff "did not make any requests of Mr. Hammer during the discovery period." Plaintiff argued he was "entitled" to paper discovery and deposition testimony from Hammer regarding his communications related to Midland Apartments.

Following argument on March 10, 2023, the judge issued an oral decision granting defendants' summary judgment motions. In her decision, the judge considered plaintiff's counterstatement of facts to both summary judgment motions. Because plaintiff's brief in opposition to Brach Eichler's motion was not filed until 10:40 p.m. on March 9, 2023 – when oral argument was scheduled the next morning at 9:30 a.m. – the judge did not consider plaintiff's submission.

The judge first addressed Brach Eichler's summary judgment motion. For count two, affirmative action for rent abatement, the judge found the record was devoid of any evidence showing plaintiff "gave defendants notice and reasonable time to correct the defect." The judge found "plaintiff admitted he did not complain to defendants about many of the issues and refused to let defendants place a heat sensor in his apartment." The judge further determined "the issues pertaining to the 2007 sewage backup . . . were settled through a Marini[2] hearing," and as such, were barred under the entire controversy doctrine.

Regarding counts three and eight, violations of the CFA, the judge found defendants were entitled to summary judgment because "[t]here [wa]s nothing

---

[2] Marini v. Ireland, 56 N.J. 130 (1970). In a summary dispossess action "[a] tenant may raise lack of habitability claims . . . and obtain a Marini hearing, provided the tenant deposits the rent with the Clerk of Court." Daoud v. Mohammad, 402 N.J. Super. 57, 59 (App. Div. 2008) (citing Marini, 56 N.J. at 147).

in the record to support unlawful business practices on behalf of the defendant[s], or ascertainable damages suffered by plaintiff."

As to count six, the judge did not "find any invasion of privacy that would be highly offensive to a reasonable person." On the contrary, the judge found defendants notified plaintiff entry into his apartment was required for reinspection, and the photographs Finer took "display[ed] plaintiff's windows and nothing more." The judge found "[c]onsidering that plaintiff had been complaining about heat in his apartment," Finer's conduct did not constitute "a highly offensive intrusion."

As to count nine, the judge found plaintiff failed to "produce any evidence of emotional distress" inflicted by defendants. Further, the judge noted plaintiff was treated by one medical provider who opined plaintiff's symptoms "should resolve within six months of the cessation of issues with the door slamming." The judge also found "no showing of extreme and outrageous conduct" or "any malice or wanton disregard" by defendants.

The judge next considered Tango Dickinson's summary judgment motion. The judge found defendants were entitled to summary judgment on count one, negligence, because plaintiff failed to provide an expert report regarding "the proper maintenance and operation of the exterior . . . slamming door," which the

A-0719-23

court determined was "beyond the ken of the average juror." Finding the absence of an expert report and any other evidence in the record "indicat[ing] there was negligence in this regard" the judge determined plaintiff failed to establish a prima facie negligence claim.

As to count four, trespass to land regarding Finer's January 2019 entry into plaintiff's apartment, the judge cited N.J.A.C. 5:10-5.1, which permits a landlord to "enter a tenant's residence without the tenant's consent for the limited purpose of maintenance, inspection and repair, upon giving reasonable notice." Citing the record, the judge found "plaintiff received three days' notice" of the landlord's entry "and did not object." Moreover, the judge found "[p]laintiff d[id] not dispute that he received the notice and that he failed to object."

The judge found defendants were entitled to summary judgment on count five, trespass to chattels. The judge was persuaded plaintiff "failed to show any evidence that his property was taken, damaged, or rendered unusable by the entry of defendants into his unit."

Lastly, as to count seven, the judge was not persuaded plaintiff established a retaliatory eviction following defendants' August 2019 summary dispossession action as the record reveals the action "was filed only after plaintiff's rent and late fees were unpaid for a series of months, and was immediately dismissed

A-0719-23

upon receipt of payment." The judge thus found defendants rebutted the statutory presumption of retaliation because "the proceeding commenced independently of any consideration of the protected activity."

On March 30, 2023, plaintiff moved for reconsideration of the March 10, 2023 summary judgment orders, and defendants moved for sanctions pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1, attorney's fees, and costs.

On April 14, 2023, the judge denied plaintiff's motions to reopen discovery and disqualify Brach Eichler. The judge noted the third amended complaint was dismissed on summary judgment on March 10, 2023, and plaintiff's "motion to reopen and extend discovery and for other relief was filed on March 8, 2023, after the close of discovery."

On June 28, 2023, the judge issued an order denying plaintiff's motion for reconsideration accompanied by a written statement of reasons.[3] The judge reasoned:

> Plaintiff cites case law and, in many circumstances, fails to provide adequate case law, stating extraordinary circumstances are found in limited situations in which such circumstances can be found. Courts have rejected arguments that have as

---

[3] The judge's decision primarily addresses plaintiff's motion to reconsider the March 10, 2023 orders granting summary judgment. In her decision, the judge also reiterated her April 14, 2023 decision denying plaintiff's motion to disqualify Brach Eichler.

their foundation carelessness, lack of circumspection, lack of diligence, or ignorance of the law. . . . Plaintiff was given eight extensions for discovery, had five arbitration adjournments, and violated two subpoena orders. The actual discovery process spanned well over 1,000 days. In opposition, . . . [d]efendants correctly state the original [s]ummary [j]udgment standard was correct as there was no genuine issue as to any material fact. Additionally, [d]efendants correctly assert that [p]laintiff has not presented any new relevant cases or evidence which would prompt reconsideration; the [c]ourt considered all these arguments at oral argument and did not make any arbitrary decisions about [s]ummary [j]udgment.

Plaintiff appealed from the orders issued on March 10, 2023 and June 28, 2023. We granted defendants' ensuing motion to dismiss the appeal without prejudice to afford the motion judge an opportunity to address defendants' then pending motion for sanctions.

In September 2023, plaintiff moved to strike defendants' motion for sanctions and recuse the motion judge. After conducting oral argument on October 20, 2023, the judge denied both motions. This appeal and cross-appeal followed.

## II. Summary Judgment

In his merits brief, plaintiff primarily challenges the motion judge's summary judgment dismissal of his third amended complaint. In the subpoints of his first argument, plaintiff argues the motion judge erroneously dismissed

the following claims: (A) CFA; (B) negligence; (C) trespass; (D) invasion of privacy; (E) retaliatory eviction; and (F) affirmative rent abatement. We address plaintiff's contentions seriatim.

We first address plaintiff's challenges to the summary judgment dismissal of his third amended complaint governed by our de novo standard of review. See Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the motion court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendants to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). We owe no deference to the court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

## A. CFA Claims

In his third amended complaint, plaintiff asserted two counts of CFA violations. In count three, plaintiff alleged defendants violated the CFA by

"fail[ing] to disclose or correct serious, ongoing problems with their residential building and have engaged in false, unfair and deceptive business practices all to [his] financial detriment." In count eight, plaintiff claimed defendants further violated the CFA by obligating plaintiff to retain counsel to address "fraudulent" late fees in connection with the June 2017 settlement and that they "filed a baseless summary dispossess action" against him in 2019.

"The CFA provides a remedy for any consumer who has suffered an ascertainable loss of moneys or property as a result of an unlawful commercial practice and allows him or her to recover treble damages, costs, and attorneys['] fees." Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013). "To fully advance the [CFA]'s remedial purposes, courts construe its provisions broadly and liberally in favor of consumers." Ibid.

"It is well-established that the broad scope of the CFA encompasses transactions between residential tenants and their landlords" and "[i]n such situations, the landlords are considered to be 'sellers' and the tenants to be 'consumers.'" Id. at 413; 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 464-65 (App. Div. 1988). However, "the [CFA] will only apply to extreme conduct of landlords sufficient to meet the condemned

commercial practices set forth in N.J.S.A. 56:8-2." 49 Prospect St. Tenants Ass'n, 227 N.J. Super. at 469.

To support a CFA claim, "a consumer must allege three elements: unlawful conduct; an ascertainable loss; and a causal relationship between the unlawful conduct and the ascertainable loss." Heyert, 431 N.J. Super. at 412. "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and violations of regulations promulgated pursuant to the statute." Ibid. "Under N.J.S.A. 56:8-2, 'affirmative acts' are defined as 'unlawful practices that include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation.'" Ibid. (quoting Thiedemann v. Mercedes-Benz USA, 183 N.J. 234, 245 (2005)); see also Robey v. SPARC Grp. LLC, 256 N.J. 541, 555 (2024).

"[T]he term 'ascertainable loss'" under the CFA "means th[e] plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009). "A plaintiff can establish an ascertainable loss by demonstrating either an out-of-pocket loss or a deprivation of the benefit of one's bargain." Robey, 256 N.J. at 548. Ascertainable loss "must be presented with some certainty demonstrating

that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment." Thiedemann, 183 N.J. at 248.

In the present matter, plaintiff failed to demonstrate defendants engaged in an unlawful practice under the CFA or that he sustained an ascertainable loss with any degree of certainty. Notwithstanding plaintiff's assertion defendants failed to disclose or correct ongoing problems, the record shows defendants endeavored to fix the building's issues. For example, Finer testified defendants replaced the boiler in 2018 and offered to place a heat sensor in plaintiff's apartment when he continued to have issues. But plaintiff refused defendants' offer.

Further, at deposition, plaintiff acknowledged: defendants promptly cleaned the sewage issues to his satisfaction; defendants installed a new elevator remedying the issues plaintiff previously experienced; and the door slamming issue improved. Accordingly, the unrefuted evidence in the motion record demonstrates defendants promptly remedied the issues cited by plaintiff. And there is no evidence to suggest defendants affirmatively acted to commit any deceptive, unconscionable, or fraudulent practices regarding the habitability of plaintiff's apartment. See id. at 245; N.J.S.A. 56:8-2.

14

The CFA claims raised in plaintiff's eighth count similarly fail. Although plaintiff asserted defendants engaged in unlawful practices by forcing him to retain Michael Wiseberg, Esq. to enforce the June 2017 settlement, when deposed, plaintiff stated he did not execute a retainer agreement with Wiseberg. Rather, their agreement "was done informally." Further, after Wiseberg called Affiliated, the late fees were removed from plaintiff's statement, demonstrating no unlawful practice by defendants under the CFA.

Regarding the August 2019 summary dispossession action, plaintiff acknowledged he contacted his bank and was advised his June 2019 rent check never cleared his account. As such, defendants did not receive his rent payment. Plaintiff's lease clearly states rent is deemed "late" if not received by the fifth of the month and late fees may be assessed if payment is not received by the tenth. Defendants sent plaintiff correspondence indicating they did not receive the rent and would institute a summary dispossession action on August 7, 2019, several weeks after the June 2019 rent was due. After plaintiff paid the June 2019 rent, defendants withdrew their lawsuit. Because defendants instituted the August 2019 action to obtain rent – which plaintiff acknowledged defendants did not receive – defendants did not engage in an unlawful or fraudulent practice. The

15

record indicates defendants instituted the 2017 and 2019 actions in good faith and plaintiff thus fails to show unlawful conduct under the CFA. See id. at 245.

Moreover, even if plaintiff could demonstrate an unlawful practice under the third or eighth counts of his complaint, he failed to demonstrate an ascertainable loss. Plaintiff's general allegation there was a diminution in value of his apartment finds no support in the record. See id. at 244. Similarly, plaintiff acknowledged he did not know how much money he paid Wiseberg regarding the June 2017 settlement. Accordingly, plaintiff's damages on both counts are purely "theoretical" and cannot pass muster under summary judgment. See Bosland, 197 N.J. at 558; Thiedemann, 183 N.J. at 249 (holding "by the time of a summary judgment motion, it is the plaintiff's obligation to be able to make such a demonstration [of ascertainable loss] or risk dismissal of the cause").

## B. Negligence

In count one, plaintiff asserted "[d]efendants . . . negligently, carelessly and with palpable unreasonableness owned, maintained, repaired the heavy, metal door to the basement at The Midland Apartments in such a way as to cause [p]laintiff . . . to become injured as the result of the hazardous, dangerous and

16

unreasonable condition."   As the motion judge found, however, plaintiff's allegations about the "slamming door" were unsupported.

To prevail on a negligence claim, a plaintiff must prove "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).   The plaintiff must establish each element by "competent proof."   Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

"Competent proof of negligence sometimes may include expert testimony," Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 504 (App. Div. 2017), and its necessity "is determined by the sound exercise of discretion by the trial judge," Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019).  "[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form valid judgment as to whether the conduct of the [defendant] was reasonable.'"  Davis, 219 N.J. at 407 (second alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also N.J.R.E. 702.

A-0719-23

Relevant here, our courts have required expert testimony in negligence cases involving alleged technical or specialized matters to avoid jury speculation. See Gore v. Otis Elevator Co., 335 N.J. Super. 296, 302-04 (App. Div. 2000) (requiring expert testimony as to whether the alleged improper maintenance of an elevator door caused the door to malfunction); Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236-37 (App. Div. 2012) (requiring expert testimony regarding the inspection and repair of an automobile engine).

As landlord, defendants owed plaintiff a duty "to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord retains control." J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 218 (2019) (quoting Scully v. Fitzgerald, 179 N.J. 114, 121-22 (2004)). That duty requires defendants to "maintain that property in a reasonably safe condition," ibid., and to "maintain and repair those facilities in or out of the tenant's premises which are an integral part of the equipment under his [or her] control." Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48, 52 (App. Div.), aff'd, 63 N.J. 577 (1973).

In the present matter, plaintiff cannot demonstrate a prima facie case of negligence absent expert testimony. Plaintiff did not allege he was physically injured by the exterior slamming door to the basement apartment complex.

A-0719-23

Rather, plaintiff claimed defendants failed to properly maintain the door, causing him sleeplessness and anxiety from the resulting noise. Although the opening and closure of a door is within a jury's common knowledge, whether the door made a loud noise when it closed does not necessarily demonstrate the door malfunctioned or was negligently maintained. Information regarding the proper maintenance procedures and closing mechanism of the door was necessary to demonstrate defendants' negligence. Because such information involves complexity, it is beyond the common knowledge of the average juror, see Ford Motor Credit Co., 427 N.J. Super. at 239. Absent expert testimony, the jury could only speculate about the door's maintenance procedures and closing mechanism. See Davis, 219 N.J. at 407. We conclude, without expert testimony plaintiff did not demonstrate defendants "fail[ed] to service, correct or abate the loud noise emanating from the heavy, steel door for a period of many years," as he maintains on appeal.

Moreover, plaintiff failed to show he suffered actual damages stemming from the slamming door. Our Supreme Court has long recognized a plaintiff asserting a negligence claim must demonstrate actual damages "that are real and substantial as opposed to speculative." Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993). Notwithstanding his allegation defendants' failure to maintain the

door caused "anxiety and sleeplessness," plaintiff acknowledged at deposition he was not diagnosed with anxiety by a medical professional and the door slamming issue improved in recent years. Plaintiff's admissions underscore his damages were "speculative" rather than "real and substantial." See ibid.

## C. Trespass

In his third amended complaint, plaintiff asserted two trespass claims: trespass to land, pled in count four, alleging Finer entered his apartment in January 2019; and trespass to chattels, pled in count five, asserting Finer moved plaintiff's belongings when he entered the apartment. In his merits brief, however, plaintiff only challenges the judge's decision on count four. "An issue not briefed on appeal is deemed waived." Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App Div. 2017) (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)); see also Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025). We therefore consider only plaintiff's claim trespass to land claim.

Pertinent to this appeal, "[a]ny multi-dwelling building containing three or more apartments is subject to the Hotel and Multiple Dwelling Law[, N.J.S.A. 55:13A-1 to -28,] and its Regulations for Maintenance of Hotels and Multiple Dwellings[,] N.J.A.C. 5:10-1.1 to -29:1." J.H., 239 N.J. at 211-12. Pursuant to

N.J.A.C. 5:10-5.1(c), occupants of such multi-dwelling buildings "shall give the owner thereof or [its] agent or employees access to any part of the unit of dwelling space upon reasonable notification . . . [to make] such inspection and such repairs or alterations as are necessary to effect compliance with the [governing] law." Indeed, "[a] landlord typically has the right to access a tenant's apartment under certain circumstances – for example, to make repairs and conduct inspections – provided the landlord gives reasonable notice." State v. Wright, 221 N.J. 456, 475-76 (2015).

Moreover, in this matter, plaintiff's lease agreement provided the tenant "shall permit the [l]andlord or its agents or employees to enter the premises at any reasonable hour for the purpose of exterminating insects or vermin, and to allow the [l]andlord to take all materials into the premises that may be required" and that "[t]he landlord shall be entitled to keys to all locks to the apartment entrance door."

With these principles in view, we discern no error in the motion judge's conclusion plaintiff failed to establish a prima facie trespass claim. The unrefuted evidence in the record establishes Finer entered plaintiff's apartment to make repairs following reasonable notification. In his January 7, 2019 letter to the building's tenants, including plaintiff, Finer specifically stated he would

21

enter the apartments on January 10, 2019 to ensure the repairs were made to remedy prior violations issued by the Department of Community Affairs. Further, in his correspondence, Finer advised the tenants if they were not home, permission to enter would be assumed.

Nor are we persuaded plaintiff did not receive notice of Finer's planned entry. At deposition, plaintiff acknowledged Joy Brandt, the "resident manager" of the building, told him about the January 2019 reinspection and he gave her permission to enter the apartment. Although Finer, not Brandt, entered his apartment, plaintiff acknowledged he received reasonable notice defendants would enter his apartment to inspect repairs to ensure "compliance with the law." See N.J.A.C. 5:10-5.1(c). We conclude Finer "was lawfully on the premises" and, as such, plaintiff failed to demonstrate a prima facie trespass to land claim. See Mesgleski v. Oraboni, 330 N.J. Super. 10, 28 (App. Div. 2000).

## D. Invasion of Privacy

In the sixth count of his third amended complaint, plaintiff claimed Finer invaded his privacy by photographing his apartment when he entered on January 10, 2019. Finer certified: "During the inspection on January 10, 2019, of [p]laintiff's apartment, I took three . . . photographs of the interior of the apartment." These photographs depicted the windows by plaintiff's desk.

22

To establish a prima facie case of invasion of privacy by an unreasonable intrusion upon the seclusion of another, see Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994), a plaintiff must demonstrate an intentional intrusion into the solitude, seclusion, or private affairs of another that is highly offensive to a reasonable person, Kinsella v. Welch, 362 N.J. Super. 143, 156 (App. Div. 2003). See also Restatement (Second) of Torts § 652B (Am. L. Inst. 1977). "The thrust of this aspect of the tort is . . . that a person's private, personal affairs should not be pried into." Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982). The interference with plaintiff's seclusion must be "a substantial one." Restatement (Second) of Torts § 652B cmt. d. Whether an intrusion is highly offensive to a reasonable person "turns on one's reasonable expectation of privacy" which is "established by general social norms." White v. White, 344 N.J. Super. 211, 222-23 (Ch. Div. 2001) (quoting State v. Hempele, 120 N.J. 182, 200 (1990)).

Here, although plaintiff was entitled to solitude and seclusion in his home, Finer was authorized by law and under the parties' lease agreement to enter plaintiff's apartment and, as such, he did not intentionally intrude into plaintiff's home. See Kinsella, 362 N.J. Super. at 156. Nor did the photographs include plaintiff's personal effects but rather, as the motion judge found, "display[ed]

23

plaintiff's windows and nothing more." See Bisbee, 186 N.J. Super. at 340 (holding a newspaper's publishing of a photograph of the plaintiff's house "taken from the street" that "merely represented a view which [wa]s available to any bystander" did not constitute an intrusion that would be highly offensive to a reasonable person).

### E. Retaliatory Eviction

In his seventh count, plaintiff alleged defendants violated N.J.S.A. 2A:42-10.10 by "maliciously fil[ing] a baseless summary dispossess action" in retaliation for his present lawsuit. As the motion judge found, however, plaintiff failed to establish defendants' August 2019 summary dispossession action was filed in retaliation. Plaintiff also failed to demonstrate damages.

N.J.S.A. 2A:42-10.12 "create[s] a rebuttable presumption" of retaliation if a landlord institutes an action against a tenant after the tenant engages in any activity described in the statute, including the tenant's "attempts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey, or its governmental subdivisions." We have recognized a "landlord can overcome this presumption only by showing that the eviction proceeding was commenced independently of any consideration of protected activities the tenant may have engaged in." Les Gertrude Assocs. v. Walko, 262 N.J. Super.

A-0719-23

544, 550 (App. Div. 1993); see also Fromet Props., Inc. v. Buel, 294 N.J. Super. 601, 618 (App. Div. 1996) (holding the presumption is rebutted "when the landlord demonstrates a non-retaliatory motive"). To preserve a claim under the N.J.S.A. 2A:42-10.10, a plaintiff must also prove he or she suffered damages resulting from the landlord's retaliation. See Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 191 (1981) (holding plaintiff's claim under N.J.S.A. 2A:42-10.10 could not be sustained for his failure to prove damages).

Plaintiff alleged he first advised defendants of his habitability issues in the early 2000s. Nearly two decades later – and more than eight months before defendants filed their August 2019 summary dispossession action – plaintiff filed his initial complaint in December 2018. Accordingly, the record is devoid of any temporal connection that defendants retaliated against plaintiff for engaging in a protected activity. Instead, the competent evidence in the motion record reveals defendants filed their summary dispossession action after plaintiff failed to pay rent and defendants dismissed their lawsuit upon receipt of plaintiff's June 2019 rent payment. Because defendants' "proceeding was commenced independently of any consideration of protected activities the tenant may have engaged in," Les Gertrude Assocs., 262 N.J. Super. at 550, defendants rebutted the presumption they retaliated against plaintiff. Moreover, plaintiff

A-0719-23

failed to produce any evidence he suffered damages resulting from defendants' alleged retaliation. See Onderdonk, 85 N.J. at 191.

## F. Affirmative Rent Abatement

Plaintiff argues the motion judge erroneously granted summary judgment on his rent abatement claim by maintaining defendants breached the covenant of habitability by failing to provide plaintiff "water, hot water, electricity, heat, elevator service[,] or quiet enjoyment of his unit" notwithstanding plaintiff's "repeated, proper notice." We disagree.

A residential lease carries an implied warranty or covenant of habitability. See Marini, 56 N.J. at 144. "A lessor becomes liable to a lessee for any breach of this covenant." Berzito v. Gambino, 63 N.J. 460, 467 (1973).

> [A] tenant may initiate an action against his [or her] landlord to recover either part or all of a deposit paid upon the execution and delivery of the lease or part or all of the rent thereafter paid during the term, where he [or she] alleges that the lessor has broken [its] covenant to maintain the premises in a habitable condition.
>
> [Id. at 469.]

"In such an action, if the alleged breach on the part of the landlord is proven, the tenant will be charged only with the reasonable rental value of the property in its imperfect condition during his period of occupancy." Ibid.

26

"As a prerequisite to maintaining such a suit, the tenant must give the landlord positive and seasonable notice of the alleged defect, must request its correction and must allow the landlord a reasonable period of time to effect the repair or replacement." Ibid. However, "[n]ot every defect or inconvenience will be deemed to constitute a breach of the covenant of habitability." Ibid. "The condition complained of must be such as truly to render the premises uninhabitable in the eyes of a reasonable person." Ibid.

At the outset, plaintiff admitted at deposition he failed to notify defendants of certain issues, such as those concerning his electricity and the building's elevator. Further, plaintiff's hot water issue was more akin to an inconvenience than a habitability issue. Finer testified the water "sometimes" was shut off "for an hour or two" when other units in the building were renovated. In addition, plaintiff acknowledged defendants promptly remedied the sewage problems to his satisfaction following each backup. These issues did not "render the premises uninhabitable in the eyes of a reasonable person." See ibid.

Moreover, as the motion judge found, plaintiff's attempt to cite the 2007 sewage backup as a basis for his breach of the covenant of habitability claim was barred by the entire controversy doctrine because the parties settled any

27

damages regarding that backup following a <u>Marini</u> hearing.  <u>See</u> <u>Bank Leumi U.S.A. v. Kloss</u>, 243 N.J. 218, 226 (2020) (requiring a plaintiff assert all claims "arise from related facts or the same transaction or series of transactions" in the same action (quoting <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C.</u>, 237 N.J. 91, 119 (2019))).

Nor are we persuaded plaintiff's complaints about the lack of heat in his apartment demonstrated defendants breached the covenant of habitability. Plaintiff complained about the lack of heat and defendants remedied the issue by installing a new boiler in 2018.  Finer testified when plaintiff's complaints persisted, defendants moved the heat sensors until the heating was adequate throughout the building's apartments.  Although plaintiff claimed the heating issues continued, defendants refuted plaintiff's allegations by producing the boiler system's sensory history reports.  Those reports revealed the average temperatures in the building ranged from seventy to seventy-three degrees Fahrenheit throughout the day and night on several dates in 2018, 2019 and 2020.

Moreover, plaintiff acknowledged defendants offered to place a heat sensor in his apartment.  The record reveals plaintiff refused.  Further, Finer's photographs depicted plaintiff's open apartment window in January 2019.

A-0719-23

Accordingly, in some ways, plaintiff became "responsible for the defective condition" by failing to allow defendants to fully remedy the situation complained of.  See Berzito, 63 N.J. at 470.

### III.  Motions to Reopen Discovery and Disqualify Brach Eichler

In his second point, plaintiff contends the motion judge erroneously denied his applications to reopen discovery and disqualify Brach Eichler from representing defendants.  We are unpersuaded.

### A.  Motion to Reopen Discovery

Plaintiff reprises his argument he was unaware, within the discovery period, Hammer was a potential witness in this case.  Plaintiff argues he had "good cause" to reopen discovery.  We have considered plaintiff's contentions in view of our deferential standard of review for discovery matters, Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011), and conclude they lack sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), beyond the comments that follow.

Plaintiff misapprehends the legal standard governing motions to reopen discovery and his contentions are belied by the record.  Pursuant to Rule 4:24-1(c), a moving party must establish "exceptional circumstances" – not good cause as plaintiff argues – to extend the discovery period "after an arbitration or

29

trial date is fixed."  To demonstrate exceptional circumstances, the movant's certification must detail facts demonstrating the reasons for the application "were beyond the reasonable control of the party seeking relief."  Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (quoting O'Donnell v. Ahmed, 363 N.J. Super. 44, 52 (Law Div. 2003)).  Examples of exceptional circumstances include "death of a family member, death or health problems of a key witness, or a personal sudden health problem."  Ibid.

In her January 20, 2023 decision granting granted defendants' application to quash Hammer's subpoena, the motion judge found Hammer "was known to plaintiff a year and a half before the end of discovery."  In her May 12, 2020 deposition, Brandt identified Hammer as one of the owners of Midland Realty.  After various extensions and more than 1000 days of discovery, the discovery period ended on December 27, 2021.  Plaintiff did not move to reopen discovery until March 8, 2023, less than two months before the April 24, 2023 trial date.  On this record, we conclude the motion judge properly denied plaintiff's motion.  Plaintiff failed to establish exceptional circumstances to support his application.

A-0719-23

### B.  Motion to Disqualify Brach Eichler

Plaintiff further contends Brach Eichler was conflicted from representing defendants because Hammer, a member of Brach Eichler, could have been called as a witness in this matter.  Plaintiff's contentions are unavailing.

We review de novo a trial court's decision on a motion to disqualify counsel.  See City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010).  RPC 3.7(a) provides "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" absent certain exceptions.  RPC 3.7(b) provides "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9."  "RPC 3.7 is a rule addressed only to a lawyer acting as an advocate at trial."  Escobar v. Mazie, 460 N.J. Super. 520, 527 (App. Div. 2019).  "As the burden of establishing disqualification is on the movant . . . it will be for plaintiff to establish that specific . . . lawyers will be necessary witnesses at trial."  Id. at 529.

Although Hammer was a partner at Brach Eichler and could have been a potential witness had plaintiff's action survived summary judgment, he was not defendants' designated trial counsel.  Accordingly, Brach Eichler was not disqualified from its representation of defendants solely because one of its

31

members could have been a witness at trial. See RPC 3.7(b). Further, plaintiff presented no evidence establishing Hammer necessarily would have been a trial witness. See Escobar, 460 N.J. Super. at 529. We therefore discern no basis to disturb the order denying plaintiff's motion.

## IV. Reconsideration

Little need be said regarding plaintiff's argument that the judge erroneously denied his motion to reconsider the orders granting summary judgment to defendants. In her decision, the judge concluded plaintiff failed to meet the standard for reconsideration. See Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (recognizing reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion").

As the motion judge found, plaintiff failed to satisfy the standard for reconsideration by identifying any new evidence or information the court overlooked or explaining why the judge's conclusions were palpably incorrect. See Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Contrary to plaintiff's argument on appeal, our review of the record reveals the judge considered plaintiff's contentions in view of all competent evidence in the motion record. Governed by our discretionary

32

standard of review, see Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021), we discern no reason to disturb the motion judge's decision.

V. Recusal

In his final point, plaintiff argues that the motion judge erroneously denied his recusal application. Plaintiff renews his argument the judge should have been recused because she was "too fully engaged with other matters to meaningfully consider the multiple critical issues that have arisen in this action." He maintains the judge lacked "concern" about Hammer's dual role as a Brach Eichler member and Midland Realty owner. The record belies plaintiff's contentions.

Rule 1:12-2 provides "[a]ny party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." Our Supreme Court has held, "[j]udges must avoid actual conflicts as well as the appearance of impropriety to promote confidence in the integrity and impartiality of the Judiciary." DeNike v. Cupo, 196 N.J. 502, 507 (2008). "[A]n appearance of impropriety is created when a reasonable, fully informed person observing the judge's conduct would have doubts about the judge's impartiality." Goldfarb v. Solimine, 460 N.J. Super. 22, 31 (App. Div.

2019) (alteration in original) (quoting Code of Jud. Conduct r. 2.1 cmt. 3), aff'd as modified on other grounds, 245 N.J. 326 (2021).

"A movant need not show actual prejudice; 'potential bias' will suffice." Ibid. (quoting State v. Marshall, 148 N.J. 89, 276 (1997)). Nonetheless, "[i]t is improper for a judge to withdraw from a case upon a mere suggestion that he [or she] is disqualified 'unless the alleged cause of recusal is known by him [or her] to exist or is shown to be true in fact.'" Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001) (quoting Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986)). "A judge's duty to sit where appropriate is as strong as the duty to disqualify oneself where sitting is inappropriate." Goldfarb, 460 N.J. Super. at 31.

Having considered plaintiff's contentions in view of our deferential standard of review, see id. at 30, we see no reason to disturb the judge's decision. Based on our review of the voluminous motion record,[4] we conclude the judge considered plaintiff's arguments and gave adequate reasons for her decisions. By doing so, the record provides no "doubts about the judge's impartiality" to necessitate recusal. Id. at 31 (quoting Code of Jud. Conduct r. 2.1 cmt. 3).

---

[4] Plaintiff's appellate appendix contains 1043 pages; Brach Eichler's appellate appendix contains 639 pages; and Tango Dickinson's appellate appendix contains 97 pages.

A-0719-23

## VI.  Brach Eichler's Cross-Appeal for Sanctions

In their cross-appeal, Brach Eichler argues the motion judge erroneously denied defendants' application for sanctions.  Defendants cite their Rule 1:4-8 letters to plaintiff, maintaining his complaint and motions for reconsideration and to join Peapack Gladstone Bank were frivolous, and plaintiff's failure to dismiss his complaint or withdraw his motions.

In her oral decision accompanying the October 20, 2023 order denying defendants' motion, the judge recognized the "contentious" nature of the litigation, including the "back and forth" interruptions and critiques by the parties.  Noting the parties "were never civil to each other," the judge found they "were equally rude" and "equally frustrated with each other."  But the judge was not convinced "[plaintiff]'s motions or filings r[o]se to the level of . . . bad faith."  The judge further found plaintiff "always tried to get more time" but "tried to do whatever he had to do to get the discovery that he believed existed to support his claims."

Rule 1:4-8 authorizes sanctions against attorneys and pro se parties for frivolous litigation.  The Rule supplements N.J.S.A. 2A:15-59.1, which permits the trial court to award to a prevailing party in a civil action "all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during

the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non[-]prevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1). To find a pleading was frivolous, the judge must conclude the filing was made "in bad faith solely for the purpose of harassment, delay or malicious injury," N.J.S.A. 2A:15-59.1(b)(1), or "[t]he non[-]prevailing party knew, or should have known" the filing "was without any reasonable basis in law or equity," N.J.S.A. 2A:15-59.1(b)(2).

"Sanctions are not to be issued lightly; they are reserved for particular instances where a party's pleading is found to be 'completely untenable,' or where 'no rational argument can be advanced in its support.'" McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 499 (App. Div. 2011) (quoting United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009)); see also Bove v. AkPharma Inc., 460 N.J. Super. 123, 148, 151 (App. Div. 2019) (noting sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1 are awarded only in exceptional cases). Simply because "some of the allegations made at the outset of litigation later prove[] to be unfounded does not render [the complaint] frivolous." Bove, 460 N.J. Super. at 148 (quoting Iannone v. McHale, 245 N.J. Super. 17, 32 (App. Div. 1990)).

A-0719-23

"When the [non-prevailing party's] conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to have acted in bad faith." Id. at 151 (alteration in original) (quoting Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999)); see also First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007) ("Where a party has reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded."); K.D. v. Bozarth, 313 N.J. Super. 561, 574-75 (App. Div. 1998) (declining to award attorney's fees as sanctions under Rule 1:4-8 where there was no showing the attorney acted in bad faith).

In view of these governing principles, and given our discretionary standard of review on a motion for sanctions, see McDaniel, 419 N.J. Super. at 498, we decline to disturb the court's order. The judge ultimately concluded plaintiff did not act in bad faith. The record supports the judge's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0719-23