**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1346-19T2

MAURICE ISSA, individually,
and d/b/a VENICIA
DIAMONDS & JEWELRY,

     Plaintiff-Appellant,

v.

LLOYDS OF LONDON, ALL
POINT INSURANCE AGENCY,
GPV HOLDINGS, LLC, and
PREFERRED MUTUAL,

     Defendants,

and

INTERNATIONAL JEWELERS
UNDERWRITERS AGENCY,
LTD, ANTONIO ACOSTA,
and MICHAEL NEMAN,

     Defendants-Respondents.

_____

Argued October 20, 2020 — Decided November 4, 2020

Before Judges Yannotti, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4937-17.

Peter J. Koulikourdis argued the cause for appellant (Koulikourdis & Associates, attorneys; Peter J. Koulikourdis and Joseph Takach, on the briefs).

Charles F. Kellett argued the cause for respondents International Jewelers Underwriters Agency, Ltd., Antonio Acosta, and Michael Neman (Kaufman Dolowich & Voluck, LLP, attorneys; Robert A. Berns and Charles F. Kellett, of counsel and on the brief).

PER CURIAM

Plaintiff Maurice Issa, individually and doing business as Venicia Diamonds & Jewelry, appeals from an October 25, 2019 order granting summary judgment to defendants International Jewelers Underwriters Agency, Ltd. (IJU), Antonio Acosta (Acosta), and Michael Neman (Neman). IJU, an insurance producer; Acosta, its sole shareholder; and Neman, an independent contractor of IJU; collectively procured plaintiff's insurance policy from Lloyds of London (Lloyds)[1].

In August 2015, an unidentified individual entered plaintiff's store, assaulted and bound plaintiff, and removed jewelry from the store. Plaintiff

---

[1] We utilize "Lloyds" as opposed to "Lloyd's," which we understand is the actual name of the company, to be consistent with the record.

A-1346-19T2

alleged losses in excess of $1 million. He submitted claims for compensation under his insurance policy, which Lloyds denied following an investigation.

The declination letter, cited the "Stock Records Clause" in the policy, which stated:

> It is a condition under this [i]nsurance that in the event of a claim being made under this [i]nsurance, the [i]nsured shall provide [Lloyds] or their representatives with all available [i]nformation including documentary evidence, whether these be official or unofficial, of all purchases, sales and other transactions of insured stock. This information will be utilized by [Lloyds] or their representatives to assist in quantifying the amount of loss claimed.
>
> In the event that the information provided does not satisfactorily substantiate the quantum claimed, [Lloyds] shall be liable only for the amount of claim accounted for. Any settlement beyond this figure shall be solely at the discretion of [Lloyds] unless otherwise endorsed herein.

The letter also cited the "Conditions" provision of the policy, which echoed plaintiff's obligation to produce his stock records, "inventory," "book[] of account, bills, invoices and other vouchers" requested by Lloyds, and submit to a deposition if necessary. Notably, the letter cited a paragraph from the conditions provision, which stated: "If the [i]nsured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this [i]nsurance shall become void and all claims hereunder shall be forfeited."

3

The letter concluded as follows:

> [Lloyds] claim investigation revealed that Venicia did not suffer a fortuitous loss recoverable under the [p]olicy and that you made false or fraudulent statements regarding the loss details and the amount of the claim. [Lloyds has] also determined that you failed to produce requested materials and information that were material to [Lloyds'] investigation; that Venicia violated the recordkeeping conditions of the [p]olicy; and that the violations of the [p]olicy conditions appreciably and significantly prejudiced [Lloyds]. As such, [Lloyds does] not owe any coverage under the [p]olicy for this loss.

In 2017, plaintiff filed a complaint, naming defendants. The complaint alleged breach of contract against Lloyds; and breach of contract, breach of the covenant of good faith and fair dealing, fraud, violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, misrepresentation, unjust enrichment, and professional malpractice against IJU, Acosta, and Neman. These claims were premised on plaintiff's allegation that IJU, Acosta, and Neman falsely represented that the Lloyds policy protected plaintiff against losses from robbery and that defendants failed to advise plaintiff on the extent of the policy's coverage. Specifically, plaintiff alleged defendants told him the policy would contain a "Private Books and Records" endorsement, but instead it contained the "Stock Records Clause." Plaintiff alleged after discussing the policy with Neman, plaintiff believed the private books and records endorsement

4

would allow him to file a claim without producing tax returns. Plaintiff also received a letter from Acosta stating the private books and records endorsement applied to his policy as of May 22, 2013.[2] In March 2018, plaintiff filed an affidavit of merit from a licensed New Jersey insurance producer asserting IJU, Acosta, and Neman's conduct "fell outside the acceptable professional standards of practice owed to the [p]laintiff."

In December 2018, the motion judge granted Lloyds summary judgment, finding plaintiff did not cooperate with its investigation and failed to provide the information it requested, and therefore Lloyds did not breach its contract with plaintiff. Plaintiff does not challenge this decision.

The judge extended discovery, originally set to end on July 24, 2018, to December 21, 2018, June 25, 2019, and then to September 25, 2019. The deadline for plaintiff's expert report was extended to July 25, 2019. When plaintiff did not serve an expert report, defendants moved to bar the report and testimony from plaintiff's expert. The judge ordered plaintiff to serve expert reports by September 9, 2019, and barred reports served beyond the deadline.

---

[2] A certification filed later by Acosta claimed the private books and records endorsement encapsulates a variety of recordkeeping endorsements, including the stock records endorsement in plaintiff's policy.

Plaintiff did not serve an expert report and defendants moved for summary judgment, arguing the claims against them could not survive without an expert to explain to the jury the standard of care, and how defendants departed from it and proximately caused plaintiff's damages. Defendants also argued the court should grant summary judgment in their favor because Lloyds denied coverage due to plaintiff's failure to cooperate and substantiate his losses, which precluded plaintiff's claims related to the policy endorsements. Plaintiff conceded the lack of an expert report barred his professional negligence claims. However, he argued the misrepresentation, fraud, and CFA claims could proceed to trial without expert testimony because Lloyds denied coverage due to plaintiff's failure to produce his tax returns, which Acosta and Neman told him he did not need not produce in the event of a loss.

Following oral argument, the motion judge issued a comprehensive written decision granting defendants' motion. The judge concluded plaintiff's claim could not be resolved

> absent expert testimony. That is, a person with expertise in insurance, particularly jewelers loss insurance, would have to explain to the jury not only the differences between "Private Books and Records" coverage and "Stock Records" coverage but also what is required to substantiate; document; and perfect a loss under these endorsements. Necessarily, this expert would need to explain how the declination by Lloyds

6

would have been obviated if the "Private B[]ooks and Records" endorsement was in effect. Such mat[t]ers . . . are beyond the ken of the average juror. <u>Townsend v. Pierre</u>, 221 N.J. 36, 35 (2015).

Furthermore, the judge concluded plaintiff's fraud and misrepresentation claims were "outgrowths of the actions taken by . . . defendants in processing the policy" and required expert testimony "to demonstrate that the procurement of a [']Stock Records['] endorsement was appropriate or not and relatedly whether assuming it was inappropriate it was a proximate cause of the denial of coverage to plaintiff . . . . Deviation standing alone, without expert testimony as to causation of damage is insufficient."

We review the grant of summary judgment "in accordance with the same standard as the motion judge." <u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 479 (2016) (quoting <u>Bhagat v. Bhagat</u>, 217 N.J. 22, 38 (2014)). We must determine "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." <u>R.</u> 4:46-2(c); <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).

On appeal, plaintiff argues the judge erred by finding an expert report necessary to prove defendants violated the CFA and the common law fraud,

misrepresentation, and unjust enrichment claims. Plaintiff asserts the judge improperly applied the learned professional exception to the CFA claim. He argues the judge erroneously concluded defendants' actions were not the proximate cause of both his damages and the failure to be compensated for the losses from the robbery.

Having reviewed the record in detail, we affirm for substantially the same reasons expressed in the motion judge's written opinion. We add the following comments.

Our Supreme Court has stated:

> In some cases, . . . the "jury is not competent to supply the standard by which to measure the defendant's conduct," and the plaintiff must instead "establish the requisite standard of care and [the defendant's] deviation from that standard" by "present[ing] reliable expert testimony on the subject." This Court has previously explained that, when deciding whether expert testimony is necessary, a court properly considers "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." In such cases, the jury "would have to speculate without the aid of expert testimony."
>
> Cases requiring the plaintiff to "advance expert testimony establishing an accepted standard of care" include "the ordinary dental or medical malpractice case." Sanzari[ v. Rosenfeld], 34 N.J. [128,] 134-35 [(1961)]; accord Bender v. Adelson, 187 N.J. 411, 435

8

(2006). In addition, our courts have recognized other esoteric subject matters requiring expert testimony, such as "the responsibilities and functions of real-estate brokers with respect to open-house tours," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993), precautions necessary to ensure "the safe conduct of a funeral procession," Giantonnio[ v. Taccard], 291 N.J. Super. [31,] 44 [(App. Div. 1996)], the appropriate "conduct of those teaching karate," Fantini v. Alexander, 172 N.J. Super. 105, 108 (App. Div. 1980), the proper application of "pertinent skydiving guidelines," Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div. 2002), and the proper "repair and inspection" of an automobile, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236-37 (App. Div. 2012).

[Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407-08 (2014) (alteration in original) (citations omitted).]

We do not consider the standard of care required of defendants as insurance producers any less esoteric than the professions noted in Davis. Only an expert can explain to the jury differences between the stock records and private books and records endorsements and their potential impact on plaintiff's coverage. Thus, expert testimony was required to show that defendant's alleged wrongful conduct was a proximate cause of plaintiff's damages.

We also reject plaintiff's assertion the judge applied the learned professional exception as a basis to dismiss his CFA claim. The judge's decision made no mention of the exception. As the judge noted, even if plaintiff could

prove defendants misrepresented material facts in producing his insurance policy, establishment of defendants' representations as the proximate cause of the coverage declination required expert testimony.

Proximate cause "requires an initial determination of cause-in-fact . . . or 'but for' causation, [which] 'requires proof that the result complained of probably would not have occurred "but for" the negligent conduct of the defendant.'" New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 379 (App. Div. 2018) (internal citation omitted) (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996)). A plaintiff must show a defendant's acts or omissions were a necessary antecedent of the loss. Ibid. (citing Francis v. United Jersey Bank, 87 N.J. 15, 39 (1981)).

As we noted, the declination letter cited plaintiff's "false or fraudulent statements regarding the loss" as the basis for the decision not to compensate plaintiff. Lloyds' certified answers to interrogatories reiterated plaintiff's loss claim would not have been covered regardless of whether the policy contained a private books and records endorsement because it denied coverage based on plaintiff's failure to cooperate with the investigation, which had no connection to defendants' alleged representations regarding the private books and records endorsement in the policy.

A-1346-19T2

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1346-19T2