**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0471-24

BRIDGES DARKO,

    Plaintiff-Appellant,

v.

SUNRUN INSTALLATION
SERVICE INC.,

    Defendant-Respondent.

_____

Submitted February 3, 2026 – Decided May 22, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1446-23.

Bridges Darko, self-represented appellant.

Gordon Rees Scully Mansukhani LLP, attorneys for respondent (Suleman Malik, on the brief).

PER CURIAM

    Plaintiff Bridges Darko appeals the August 27, 2024, Law Division order granting summary judgment in favor of defendant Sunrun Installation Service,

Inc. and dismissing plaintiff's complaint. This case arises from defendant's installation of a solar electric system on plaintiff's roof. Plaintiff contends defendant damaged his roof during the installation, causing leaks and the deterioration of his interior ceiling and walls. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following facts and procedural history from the record. Plaintiff purchased a solar electric system from Costco on or about November 30, 2019. Defendant served as Costco's independent third-party subcontractor for the purposes of providing and installing the system. In January 2020, defendant installed the system on the roof of plaintiff's home. In May 2020, plaintiff noticed water dripping from his ceiling following snowmelt and rain. He reported the issue to defendant, believing it was related to the installation of the system. On May 27, 2020, defendant sent a technician to inspect plaintiff's roof.[1] The technician concluded that there were no "solar [electric system] related leaks" and instead attributed the leak to "poor shingles" and an issue with the flashing near the attic vent.

---

[1] Plaintiff disputes that this inspection ever occurred. However, in its summary judgment motion, defendant provided a copy of the May 2020 inspection report as well as photos from the inspection.

A-0471-24

According to plaintiff, over the next two years, the leak continued to get worse and mold developed on his walls and ceiling. In late 2022, plaintiff hired a contractor, Kevin Mulholland LLC, to inspect and repair his roof. According to plaintiff, the contractor assessed the roof and determined that the leak was caused by the solar panel installation. On December 19, 2022, plaintiff notified defendant of additional damage to his roof.

Defendant requested that plaintiff provide a report from his roofing contractor on company letterhead indicating that the damage was solar-related. In response, plaintiff forwarded an email from the contractor, in which the contractor states that he inspected the roof and determined that the leak was coming from the solar panels. Plaintiff never produced any report or further documentation from the contractor.

On December 22, 2022, plaintiff requested that defendant remove the panels from his roof so that he could fix the leak. In response, defendant dispatched a contractor to perform a second inspection of plaintiff's roof. According to plaintiff, this contractor—Untouchable Roofers—concluded that two exhaust pipe sleeve seals had been damaged during installation of the system and required replacement. Plaintiff further states that defendant refused to give him a copy of Untouchable Roofers' inspection report, but that he was

A-0471-24

able to get a copy from Untouchable Roofers directly.  Additionally, in discovery, plaintiff disclosed a video he took, which shows an unidentified individual stating that the damage to plaintiff's roof was caused by defendant's installation.[2]  According to plaintiff, this individual is the inspector from Untouchable Roofers.  Plaintiff further claimed that in February 2023, he hired a contractor to repair his roof at a cost of approximately $16,000.

On May 26, 2023, plaintiff filed a complaint against defendant, which it answered on September 14.  On December 2, the court notified the parties that the discovery end date would be February 11, 2024.  On December 27, defendant served discovery requests on plaintiff.  On February 2, 2024, plaintiff provided responses, in which he certified that "[a]nything related to the case (video/text/photos)" was already submitted to defendant by email.  On February 13, the parties submitted a joint request to extend the discovery end date to March 12.  The court denied this request on March 6.  On May 3, the court notified the parties that the case was scheduled for trial on September 16.

On July 12, defendant moved for summary judgment.  The court notified the parties that the motion would be decided on August 16.  In support of its motion, defendant provided a report from its expert witness, Tyler Ellis.  In an

---

[2] Neither plaintiff's nor the unidentified individual's face is shown in the video.

A-0471-24

affidavit, Ellis concluded that, based on his assessment of photos of the roof and interior ceiling, any leaks that may have occurred were not caused by the installation of the solar electric system. Plaintiff did not file any opposition to defendant's motion for summary judgment.

On August 21, defendant requested an adjournment of the September 16 trial date. On August 23, plaintiff submitted a letter to the court opposing defendant's adjournment request.

On August 27, the court held a hearing on defendant's summary judgment motion. At the beginning of the hearing, the court asked plaintiff if he had filed any opposition to defendant's motion. Plaintiff replied, "Yes, I did it on Friday." Defense counsel then interrupted and informed the court that the document plaintiff was referring to was his letter opposing adjournment of the trial date, which did not include formal opposition to the summary judgment motion. The court asked if plaintiff "underst[ood] that," and plaintiff said he did.

The court proceeded to grant summary judgment in favor of defendant, issuing an oral decision. The court noted that it had received no formal opposition to defendant's motion and would therefore decide the motion based on defendant's submissions. The court adopted defendant's statement of undisputed material facts and concluded that plaintiff failed to provide any

5

admissible evidence in support of his position that the leaks were solar-electric-system-related.  Specifically, the court held that both the forwarded email from Kevin Mulholland LLC and the video recording were inadmissible hearsay.  The court further concluded that plaintiff failed to establish the authenticity or reliability of the video recording, as it only shows that he had a discussion with "someone, not a representative of Untouchable Roofers as he alleges in the complaint."  Finally, the court determined that plaintiff's case required expert testimony as a matter of law, because his claim that the construction or installation of the solar electric system caused the leaks is beyond a jury's lay understanding.  The court thereupon granted summary judgment in favor of defendant.

This appeal follows.  Plaintiff raises the following contentions on appeal:

POINT I
THE COURT BELOW ERRED BY DENYING THE PARTIES' JOINT APPLICATION TO EXTEND DISCOVERY, THEREBY PREJUDICING PLAINTIFF'S ABILITY TO PROSECUTE HIS CASE.

POINT II
THE COURT BELOW ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT DESPITE THE EXISTENCE OF MATERIAL ISSUES OF FACT AND, IN ANY EVENT, IGNORING THE CONFUSION OF PRO SE PLAINTIFF AS TO THE SCHEDULED TRIAL DATE.

A-0471-24

II.

We first address plaintiff's contention that the trial court erred when it denied the parties' joint motion to extend the discovery deadline. Specifically, plaintiff contends that, if granted more time, he could have deposed various contractors who believed that defendant's negligence caused the damage to his roof.

We begin our analysis by acknowledging the governing legal principles, including the scope of our review. "An appellate court applies 'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'" C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "It 'generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (alteration in original) (quoting Pomerantz, 207 N.J. at 371).

Under Rule 4:24-1(c), parties may consent to extend the time for discovery but must do so "prior to the expiration of the discovery period." "The 'good cause' standard applies to motions to extend discovery unless an arbitration or trial date is fixed." Tynes v. St. Peter's Univ. Med. Ctr., 408 N.J.

Super. 159, 168 (App. Div. 2009).  Here, the parties moved to extend discovery before a trial date was set, so the good cause standard applies.  "'[G]ood cause' is a 'flexible term' without a fixed or definite meaning," and courts consider a non-exhaustive list of nine factors when deciding whether good cause exists. Building Materials Corp. of America v. Allstate Ins. Co., 424 N.J. Super. 448, 480 (App. Div. 2012) (quoting Tynes, 408 N.J. Super at 169); see also Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 217 (App. Div. 2022) (noting that the factors articulated in Building Materials Corp. of America are non-exhaustive).  Specifically, trial courts must consider:

> (1) the movant's reasons for the requested extension of discovery;
>
> (2) the movant's diligence in earlier pursuing discovery;
>
> (3) the type and nature of the case, including any unique factual issues which may give rise to discovery problems;
>
> (4) any prejudice which would inure to the individual movant if an extension is denied;
>
> (5) whether granting the application would be consistent with the goals and aims of "Best Practices";
>
> (6) the age of the case and whether an arbitration date or trial date has been established;
>
> (7) the type and extent of discovery that remains to be completed;

8

(8) any prejudice which may inure to the non-moving party if an extension is granted; and

(9) what motions have been heard and decided by the court to date.

[Tynes, 408 N.J. Super. at 169-70 (quoting Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80, 87-88 (App. Div. 2007)).]

Here, plaintiff brought suit on May 26, 2023, defendant answered on September 14, 2023, and on December 2, 2023, the court informed the parties of the February 11, 2024, discovery end date. Importantly, plaintiff does not claim in his appellate brief that he made any efforts to pursue discovery during this time period and provides no explanation for his failure to do so—nor does anything in the trial court record explain that failure. Furthermore, plaintiff does not explain what he would have done between February 13, the date the parties submitted the joint request, and March 12, the proposed new discovery end date. We add the court denied the request on March 6, just days before the proposed new end date. In these circumstances, we conclude the trial court did not abuse its discretion in denying the parties' request to extend discovery and we see no harm to plaintiff resulting from the denial.

A-0471-24

## III.

We next address plaintiff's contention the trial court erred in granting summary judgment to defendant. Once again we begin by considering the legal principles that govern this appeal. We review decisions on a motion for summary judgment de novo, applying "the same standard as the trial court." State v. Anderson, 248 N.J. 53, 67 (2021) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). Courts must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)). In contrast, the court must deny summary judgment if the evidence is conflicting and there are material facts in dispute that a rational factfinder could resolve in favor of the non-movant. Mangual v. Berezinsky, 428 N.J. Super. 299, 308-09 (App. Div. 2012) (denying summary judgment because "a rational jury could . . . readily conclude" that the movant's assertions were incorrect); accord Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023) (courts "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to

permit a rational factfinder to resolve the alleged disputed issue in favor of the" non-movant (quoting Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023))).

In applying this standard, the "court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [them] the benefit of all legitimate inferences which can be deduced therefrom." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995) (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991) and S. Pressler, Current N.J. Court Rules, R. 4:40-2 comment (1991)); see also Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023) (allowing "reasonable inferences" from the record in the non-movant's favor). However, "conclusory and self-serving assertions by one of the parties are insufficient" to overcome a summary judgment motion. Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005)).

Under Rule 4:46-5:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleading, but must respond by affidavits meeting the requirements of R. 1:6-6 or as otherwise provided in this rule and by R. 4:46-2(b), setting forth specific facts showing that there is a genuine issue for trial. If the

11

> adverse party does not so respond, summary judgment,
> if appropriate, shall be entered.
>
> [(Emphasis added).]

Here, plaintiff failed to respond to defendant's motion. Therefore, the trial court properly restricted its review of the motion to defendant's statement of undisputed material facts and supporting exhibits.

The trial court found two grounds for granting summary judgment: (1) the only pieces of record evidence that could plausibly establish a material factual dispute—the forwarded emails and the video recording—were inadmissible, unauthenticated hearsay; and (2) plaintiff's case required expert testimony as a matter of law, which he failed to produce.

## A.

We first address plaintiff's failure to present admissible evidence in support of his claim. "We have commented on numerous occasions that summary judgment motions must be supported by relevant and admissible evidence." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 164 (App. Div. 2005) (collecting cases). Relatedly, "[w]e defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). "Under that deferential standard, we review a trial court's evidentiary ruling only

for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

Here, the trial court determined that both the forwarded email and video recording constitute inadmissible, unauthenticated hearsay evidence. The email purports to be from Kevin Mulholland LLC, but plaintiff provided no affidavit or certification establishing its authenticity. Nor was Kevin Mulholland disclosed as an expert. Likewise, plaintiff failed to authenticate the video recording, establish that the unidentified person in the video is an inspector from Untouchable Roofers as he alleges, or provide an affidavit or certification from the alleged inspector.

In these circumstances, we are satisfied that the trial court properly declined to consider the emails and video recording. Given that defendant's statement of facts and the remainder of defendant's exhibits all indicated that the installation of the solar electric system caused no damage to plaintiff's property, summary judgment was proper.

B.

Although the first ground relied upon by the trial court is sufficient by itself to support summary judgment dismissal, we proceed to consider the second ground—plaintiff's failure to present expert testimony. The law is well-

settled that in some negligence[3] cases, "the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407 (2014) (alterations in original) (citations omitted); see N.J.R.E. 702. "[W]hen deciding whether expert testimony is necessary," we consider "'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Ibid. (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). For example, we have required expert testimony to establish the standard of care governing the "repair and inspection" of an automobile, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236-37 (App. Div. 2012); whether "improper maintenance caused an elevator door to malfunction," Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 341 (App. Div. 2000); and, generally, allegations of "deficiencies in design or construction," D'Alessandro v. Hartzel, 422 N.J. Super. 575, 581 (App. Div. 2011) (citations omitted).

---

[3] Plaintiff's self-represented complaint does not mention a particular cause of action, but the facts he alleges appear to state a negligence claim.

A-0471-24

Here, plaintiff alleges that defendant improperly installed a solar electric system on his roof, causing the leak. We are satisfied that the interrelated questions of what caused the leak and whether installation of the solar electric system fell below the standard of care are beyond the understanding of a lay juror, meaning that plaintiff was required to present expert testimony to prove his case. His failure to present such expert opinion provides an independent and sufficient ground to grant summary judgment in defendant's favor.

IV.

Finally, we address plaintiff's contention that his failure to file any opposition to defendant's summary judgment motion was due to his mistaken belief that he could wait to present his evidence at trial in September. More specifically, he contends that the trial court's order declining to adjourn the trial date misled him into thinking that the trial would occur regardless of the outcome on summary judgment. Plaintiff suggests that, because he is a self-represented litigant, this confusion was understandable and excusable, and he "should not be punished for seeking to do the right thing and should not be denied his day in court."

Defendant stresses that by August 27, the day the court declined to adjourn the trial date, plaintiff had already missed the August 6[4] deadline to oppose summary judgment. Therefore, defendant argues, plaintiff's alleged confusion related to the court's order—even if it were a cognizable excuse—was not the cause of his failure to oppose the motion. We add that plaintiff could not reasonably have expected to present evidence at trial that had not been disclosed in discovery. See Pretrial Information Exchange, Pressler & Verniero, Current N.J. Court Rules, Appendix XXIII to R. 4:25-7(b) (requiring disclosure of all witnesses and exhibits to be relied on at trial seven days prior to trial date).

We are unpersuaded by plaintiff's explanation. Self-represented litigants "are not entitled to greater rights than litigants who are represented by counsel." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014) (citing Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982)). However, we have also recognized that "due process principles permit the imposition of a procedural bar only after consideration of [a self-represented] litigant's 'reasonabl[e] expect[ations]'" about what might occur. Midland Funding LLC

---

[4] Under Rule 4:46-1, plaintiff's opposition was due ten days before the August 16 return date.

A-0471-24

v. Albern, 433 N.J. Super. 494, 500 (App. Div. 2013) (second and third alterations in original) (quoting Rubin, 188 N.J. Super. at 159).

We find our decision in Rubin to be instructive. In that case, the self-represented defendant believed he could respond to the plaintiff's motion by appearing in court on the return date, when in fact, he was required to file written opposition. Despite the defendant's appearance on the return date, the trial court did not allow him to respond to the motion and granted it on an ex parte basis. 188 N.J. Super. at 156-57. We held that the trial court was obligated to allow the defendant "a right to be heard, either orally or by filed papers," and we noted that the defendant "reasonably expect[ed] from the text of the notice [of motion] that his procedural rights [would] be protected by his appearance in court on the noticed date." Id. at 158-59.

Here, in contrast to the situation in Rubin, plaintiff took no action to respond to defendant's motion for summary judgment, despite the court's notifying both parties that it would decide the motion on August 16. Furthermore, unlike in Rubin, plaintiff's claim that he believed that he need not respond to defendant's motion and could simply wait for the September 16 trial was not reasonable in light of the court's notice that it would decide the motion for summary judgment in mid-August. We stress that the court order declining

17

to adjourn the trial came after plaintiff had already missed the summary judgment deadline and therefore could not have caused his failure to oppose the motion. And as we have already noted, plaintiff could not reasonably have expected to admit evidence at trial that had not been revealed during discovery.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division